UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOANNE SASSONE, MELANIE PARTELOW    :
NANNA, KRISTY NICKERSON, and MARY
BETH SANGALLI,    :

                Plaintiffs,    :    07 CV. 4142 (MDF)

      -against-    :

VINCENT QUARTARARO, individually,    :
ROBERT J. REIDY, Jr., individually, CAROL
DEALLEAUME, individually, and MAHOPAC    :
CENTRAL SCHOOL DISTRICT,

                      :

              Defendants.
                      :
------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

SNITOW KANFER HOLTZER & MILLUS, LLP
575 Lexington Avenue, 14th Floor
New York, New York 10022
(212) 317-8500

*Attorneys for Defendants Vincent Quartararo,*
*Robert J. Reidy, Jr., Carol Dealleaume and*
*Mahopac Central School District*

# TABLE OF CONTENTS

**Page**

TABLE OF CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

THE COMPLAINT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

POINT I     PLAINTIFFS' DESIRED SPEECH IS NOT
            PROTECTED BY THE FIRST AMENDMENT . . . . . . . . . . . . . . . . . . 4

POINT II    THE DISTRICT'S JUSTIFICATION FOR
            SUSPENDING PLAINTIFFS OUTWEIGHED
            ANY RIGHT TO SPEECH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

POINT III   THIS ACTION SHOULD BE DISMISSED
            WITH RESPECT TO THE INDIVIDUAL
            DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            A.   The Complaint Fails to Plead Any
                 Allegation of Personal Involvement
                 of Defendants Reidy and Dealleaume . . . . . . . . . . . . . . . . . . . . . 11

            B.   All of the Individual Defendants are
                 Protected by the Doctrine of Qualified
                 Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

# TABLE OF CASES

**Page(s)**

Babb v. Chertoff,
  2006 WL 1371679, *5 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bazile v. City of New York,
  215 F.Supp.2d 354 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Bernheim v. Litt,
  79 F.3d 318 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

Cahill v. O'Donnell,
  75 F.Supp.2d 264 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

Castro v. U.S.,
  34 F.3d 106, 112 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Colon v. Coughlin,
  58 F.3d 865 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Connick v. Myers,
  461 U.S. 138, 103 S.Ct. 1684 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 9

Dasher v. Hughes,
  2000 WL 726865, *7 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Ezekwo v. New York City Health and Hosp. Corp.,
  940 F.2d 775 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Gan v. City of New York,
  996 F.2d 522 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Genas v. State of N.Y. Dept. of Correctional Services,
  75 F.3d 82 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Gibson v. Commissioner of Mental Health,
  2006 WL 1234971, *5 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Heil v. Santoro,
  147 F.3d 103 (2d Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF CASES  (Cont'd)

**Page(s)**

Hunter v. Bryant,
    502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . 14

Jean-Laurent v. Wilkerson,
    438 F.Supp.2d 318 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Liu v. New York City Police Dep't,
    216 A.D.2d 67, 627 N.Y.S.2d 683 (1st Dep't) , lv denied,
    87 N.Y.2d 802 (1995), cert. denied, 517 U.S. 1167 (1996) . . . . . . . . . . . . . . . . . . . . . 14

Malley v. Briggs,
    475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) . . . . . . . . . . . . . . . . . . . . . . . . 14

Melzer v. Board of Education of City School Dist. of City of New York,
    336 F.3d 185 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Monell v. Department of Soc. Servs.,
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 12

Patches v. City of Phoenix,
    68 Fed.Appx. 772 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Piesco v. City of New York, Dept. of Personnel,
    933 F.2d 1149 (2d Cir.), cert. denied, 502 U.S. 921,
    112 S.Ct. 331, 116 L.Ed.2d 272 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rao v. New York City Health and Hospitals Corp.,
    905 F.Supp. 1236 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Saulpaugh v. Monroe Community Hosp.,
    4 F.3d 134 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Segal v. Crotty,
    352 F.Supp.2d 424 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Shelton Police Union, Inc. v. Voccola,
    125 F.Supp.2d 604 (D.Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15-16

# TABLE OF CASES  (Cont'd)

**Page(s)**

Shomo v. City of New York,
    2005 WL 756834, *7 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Soares v. Connecticut,
    8 F.3d 917 (2d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Tierney v. City of New York,
    2007 WL 895133, *20 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Nat'l Treasury Employees Union,
    513 U.S. 454, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995) . . . . . . . . . . . . . . . . . . . . . . . . 9

Verri v. Nanna,
    972 F.Supp. 773 (S.D.N.Y.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Waters v. Churchill,
    511 U.S. 661, 114 S.Ct. 1878 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Yant v. Scholack,
    1998 WL 157053, *7 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Zaretsky v. New York City Health and Hospitals Corp.,
    84 N.Y.2d 140, 638 N.E.2d 986 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOANNE SASSONE, MELANIE PARTELOW          :
NANNA, KRISTY NICKERSON, and MARY
BETH SANGALLI,                            :

                       Plaintiffs,          :          07 CV. 4142 (MDF)

      -against-                           :

VINCENT QUARTARARO, individually,         :
ROBERT J. REIDY, Jr., individually, CAROL
DEALLEAUME, individually, and MAHOPAC     :
CENTRAL SCHOOL DISTRICT,
                                 :

               Defendants.              :
------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

### PRELIMINARY STATEMENT

      In this purported civil rights action, defendants Vincent Quartararo, individually,

Robert J. Reidy, Jr., individually, Carol Dealleaume, individually, and Mahopac Central School

District (collectively, "Defendants") submit this motion pursuant to Federal Rules of Civil

Procedure 12(b)(6) for failure to state a cause of action.

      Plaintiffs have commenced this action against the Mahopac Central School

District ("the District") and three of its employees in connection with the alleged violation of

Plaintiffs' constitutional rights. Plaintiffs, who are themselves employees of the District, claim

that the part of their suspension with pay which prohibited them from discussing the status or

details of a matter currently undergoing a criminal investigation constitutes a "gag order" which

infringes on their First Amendment rights. As demonstrated below, plaintiffs' Complaint lacks

any indication that their desired speech would be protected by the First Amendment.

Even if Plaintiffs' desired speech were protected by the First Amendment, as

public employees they still lack an automatic right to that speech if their employer's justifications

for prohibiting the speech outweigh their rights. In this instance the District's justifications for

forbidding the desired speech – i.e., to ensure that the ongoing investigation remain uncorrupted

and to protect those involved with the investigation – far preponderate Plaintiffs' right to speak

on the issue.

Nor should any of the individual defendants, and in particular Robert J. Reidy, Jr.

and Carol Dealleaume, be subject to this lawsuit in light of their inherent qualified immunity

which Plaintiffs cannot overcome. Accordingly, the Complaint is facially deficient and must be

dismissed.

THE COMPLAINT

Plaintiffs bring this action for compensatory and punitive damages in connection

with their suspension with pay, and specifically the provision which precludes them from

speaking on a matter which is currently the subject of a criminal investigation. Plaintiffs assert

their claim under the First Amendment to the United States Constitution, pursuant to 42 U.S.C. §

1983. (Complaint ¶ 1)

Plaintiffs allege that they are Teacher's Aides who, until the suspension, worked

at the Mahopac Falls Elementary School with autistic children in the school's "Bridge Program."

(Complaint ¶ 3) According to the Complaint, in March 2007, Plaintiffs "expressed concerns to

2

the Defendants" about certain statements and actions taken by five of their colleagues during

their work with the autistic students. (Complaint ¶ 8)[1] Specifically, the Complaint states that they

related to Defendants their personal observations of, *inter alia*:

- their colleagues' use, in the classroom, of various degrading nicknames for the autistic children;

- one colleague's slapping another colleague's buttocks and massaging her in front of their students;

- one colleague's grabbing another colleague's breasts in front of their students;

- one colleague's exposing her breasts to another colleague in front of their students;

- one colleague's exposing her nipples through a crocheted blouse to her students;

- two colleagues' engaging in sex-related discussions in front of their students;

- "Levy and Reynolds' altering of [an] autistic child's manually operated 'communication device' [which that child was supposed to use to respond to questions by 'speaking': 'I am here' and/or 'Hello everyone'] so that when the child used the device it instead would 'say': 'I'm sitting right here, can't you friggin see me' and 'Hello, I am here today, everybody go away'; and

- one colleague falsified school records so as to give the false impression that she provided speech therapy to her students. (Complaint ¶ 8).

Thereafter, "Defendants ordered Plaintiffs to reiterate their complaints" to the

police. (Complaint ¶ 9) Plaintiffs complied, and as a result, several of those other colleagues

were arrested and charged. (Complaint ¶ 9).

The Complaint continues insofar as it alleges that on April 6, 2007, "[o]ut of

concern that Plaintiffs would also communicate their said concerns to the parents of their autistic

---

[1] It is undisputed that, as alleged by Plaintiffs (Complaint ¶¶ 4-6), Defendant Quartararo is the District's Assistant Superintendent, Defendant Reidy is the District's Superintendent of Schools and Defendant DeAlleaume is a District Acting Interim Principal.

3

students and/or the media," "Quartararo, acting on behalf of himself and his co-defendants ...

issued to each Plaintiff a letter advising," *inter alia*:

> You are hereby placed on administrative reassignment to home,
> effective April 10, 2007, with full pay and benefits, pending the
> District's investigation into certain issues which have recently
> come to our attention in connection with your employment.
>
> You are not allowed on school grounds or at school sponsored
> events until further notice.  You are also not allowed to have
> any contact with students or their parents until further notice.
> (Complaint ¶ 10).

Plaintiffs contend that the intention of this letter was "to give the false public

impression that Plaintiffs had engaged in misconduct and/or criminal wrongdoing of the same or

a similar nature" to that of their colleagues. (Complaint ¶ 12).  Consequently, the Complaint

continues, Plaintiffs have suffered damages related to their inability to convey their innocence to

the public. (Complaint ¶ 13).  Plaintiffs therefore maintain that "Defendants' conduct and

retaliatory conduct violated Plaintiff's rights as guaranteed by the First Amendment to the United

States Constitution." (Complaint ¶ 15).

As demonstrated below, none of these allegations give rise to a § 1983 claim

against the District or any other defendant and the pleading should be dismissed with prejudice.


<u>ARGUMENT</u>

<u>POINT I</u>

PLAINTIFFS' DESIRED SPEECH
<u>IS NOT PROTECTED BY THE FIRST AMENDMENT</u>

The nucleus of Plaintiffs' claim is that Defendants' alleged intention of issuing the

suspension letter was "to give the false public impression that Plaintiffs had engaged in

misconduct and/or criminal wrongdoing of the same or a similar nature" to that of their colleagues, for which Plaintiffs have been damaged.  In other words, Plaintiffs assert that they have been wronged because they cannot assure the public that they had no involvement in a scandal involving some of their colleagues.  Thus this is not a classic free speech retaliation claim as no retaliation is alleged.

It is well settled that "[a] public employee's right to freedom of speech is not absolute." Bernheim v. Litt, 79 F.3d 318, 324 (2d Cir. 1996).  For speech of a government employee to be protected by the First Amendment:

> "the speech must be on a matter of public concern, and the
> employee's interest in expressing herself on this matter must not be
> outweighed by any injury the speech could cause to the interest of
> the State, as an employer, in promoting the efficiency of the public
> services it performs through its employees."

Waters v. Churchill, 511 U.S. 661, 668, 114 S.Ct. 1878 (1994).  Of paramount importance is that the subject speech be on a matter of public concern.  Whether a particular instance of speech by a public employee relates to a matter of public concern is a question of law to be answered by the court. Rao v. New York City Health and Hospitals Corp., 905 F.Supp. 1236, 1241 (S.D.N.Y. 1995).  Plaintiffs' desired speech does not fall into that category.

A public employee's speech on matters of "purely personal interest or internal office affairs does not constitute a matter of public concern and is, in contrast, not entitled to constitutional protection" . See Verri v. Nanna, 972 F.Supp. 773, 785 (S.D.N.Y.1997); see also Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684 (1983) ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – certainly every criticism directed at a public official – would plant the seed of a

5

constitutional case."). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of a personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147, 103 S.Ct. 1684.

Plaintiffs' desired speech to make clear that they themselves are not the subjects of a criminal investigation does not concern a matter of public interest. The sum and substance of plaintiff's claim is purely limited to their interest to speak out to prevent unknown third parties from thinking that Plaintiffs were somehow responsible for the acts of their colleagues. Indeed, the matter of Plaintiffs' reputation is not protected by the First Amendment. See Cahill v. O'Donnell, 75 F.Supp.2d 264 (S.D.N.Y. 1999).

In Cahill, the plaintiffs, who were officers in the Internal Affairs Division of the New York State Police, claimed that because of their participation in two investigations, they were stripped of responsibilities, punitively denied transfers and falsely accused of gender discrimination. The Court held that statements made by the plaintiffs were not matters of public concern. The Court stated that:

> All the admissible evidence adduced by the plaintiffs illustrates that they were not speaking out in an attempt publicly to expose institutional problems or police coverups, but rather complaining to their superiors about their perceived mistreatment by the PBA and the lack of support by the upper level officials. The admissible evidence adduced on this motion establishes that these statements were made because of the plaintiffs' overriding desire to clear their names and maintain their reputations and standing with their colleagues in the face of the attacks by the PBA. (Emphasis added)

Cahill, 75 F.Supp2d at 274.

6

Likewise, in <u>Ezekwo v. New York City Health and Hosp. Corp.</u>, 940 F.2d 775, 781 (2d Cir. 1991), the Second Circuit applied the principles articulated in <u>Connick</u> to a physician's complaints about a hospital residency program. There, a doctor in the ophthalmology residency program at Harlem Hospital Center claimed that she was denied appointment as Chief Resident because she complained about the director of the residency program and about various aspects of the program. <u>Ezekwo</u>, 940 F. 2d at 777-80. The resident's complaints included the failure of attending physicians and lecturers to be present at scheduled times, the manner in which she was treated by the director and evaluated by him, her lack of opportunity to perform surgery, poor hospital maintenance, the director's poor management and motivational skills, and the poor teaching methods of attending physicians. <u>Id.</u> at 777-78. She also complained that the program director had discriminated against her on the basis of her race, gender, and national origin, fabricated information in her departmental file, and engaged in "smear tactics" aimed at damaging her career. <u>Id.</u> at 778.

The Second Circuit held that the resident's complaints were not protected by the First Amendment because

> [v]iewed objectively and as a whole, Ezekwo's statements did not address matters of public concern. Her complaints were personal in nature and generally related to her own situation within the HHC residency program. Our review of her prolific writings convinces us that Ezekwo was not on a mission to protect the public welfare. Rather, her primary aim was to protect her own reputation and individual development as a doctor.

<u>Id.</u> at 781. Moreover, the fact that one or two of the resident's complaints could be construed broadly to implicate matters of public concern "[did] not alter the general nature of her statements." <u>Id.</u>

Following <u>Ezekwo</u>, in <u>Saulpaugh v. Monroe Community Hosp.</u>, 4 F.3d 134 (2d Cir. 1993), the Second Circuit held that a public employee's complaints of sexual harassment were not protected by the First Amendment because they were "motivated by and dealt with her individual employment situation." <u>Saulpaugh</u>, 4 F.3d at 143. The court noted that "[h]ad Saulpaugh's complaints to her supervisors implicated system-wide discrimination they would have unquestionably involved a matter of 'public concern.'" <u>Id.</u> (citations omitted). The court found, however, that there was

> no indication that the plaintiff "wanted to debate issues of sex discrimination," that her suit sought "relief against pervasive or systemic misconduct by a public agency or public officials," or that her suit was "part of an overall effort . . . to correct allegedly unlawful practices or bring them to public attention."

<u>Id.</u> (citation omitted).

Here, significantly, Plaintiffs have not been prevented from speaking out. When they revealed that they had allegedly witnessed inappropriate behavior on the part of their colleagues, it was the Mahopac School District officials who demanded they reveal the allegation to the authorities. The only issue now for plaintiffs is how they will be perceived by others in light of their suspensions with pay. Thus, like the plaintiffs in <u>Cahill</u> and <u>Ezekwo</u>, their concerns are purely personal in nature. Absent Plaintiffs' demonstrating that the desired speech concerned a matter of public interest, they cannot sustain a § 1983 claim under the First Amendment. <u>See</u> <u>Bazile v. City of New York</u>, 215 F.Supp.2d 354, 364 (S.D.N.Y. 2002) (plaintiff's complaints regarding his particular employment dispute, and his dissatisfaction with his assignment, did not involve a matter of general public interest and therefore did not qualify as protected activity for the purposes of § 1983); <u>Bernheim v. Litt</u>, 79 F.3d 318, 324 (2d Cir. 1996) (some of Bernheim's speech related to the conditions of her employment at CS 67 and her rejection as a speaker at the

AFT convention were matters of personal interest and therefore not protected speech).

## POINT II

### THE DISTRICT'S JUSTIFICATION FOR SUSPENDING PLAINTIFFS OUTWEIGHED ANY RIGHT TO SPEECH

Even if Plaintiffs' desired speech did constitute concern about a public matter, under the circumstances they still would have no constitutional right to discuss it. A public employer enjoys wide latitude in managing its office, see Connick , 461 U.S. at 146, and therefore has "a legitimate interest in regulating the speech of its employees that differs significantly from its interest in regulating the speech of people in general," Piesco v. City of New York, Dept. of Personnel,  933 F.2d 1149, 1155 (2d Cir.), cert. denied, 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991).

In evaluating whether a government employer has infringed upon an employee's right to speech, the courts apply a balancing test to weigh the rights of a public employee versus the employer's ability to perform its necessary functions. Zaretsky v. New York City Health and Hospitals Corp., 84 N.Y.2d 140, 145, 638 N.E.2d 986 (1994).  This "balancing test allows the government a degree of control over its employees to permit it to provide services to the public efficiently and effectively." Melzer v. Board of Education of City School Dist. of City of New York, 336 F.3d 185, 192-93 (2d Cir. 2003).

Here, the District's effective operation of its services justifies its discipline of Plaintiffs and its prohibition of their desired speech. See United States v. Nat'l Treasury Employees Union, 513 U.S. 454, 466, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995).  Plaintiffs concede that they were aware of the alleged commission of at least nine separate types of

9

inappropriate behavior.  Plaintiffs also allege revealing that one colleague allegedly submitted fraudulent school records.

Based simply on Plaintiffs' own allegations, there is a clear inference that these events did not all take place in a day but rather occurred over a period of time.  There is also a clear inference that had the District become aware of any one of these alleged instances it would have preferred charges against the offending employees.  Thus, as Plaintiffs waited until the alleged commission of eight more of the purported acts after knowing of the first it should come as no surprise that they were suspended with pay pending further investigation into the allegations.  Certainly the District would have grounds to suspend employees who failed to report activity of a criminal or otherwise unprofessional nature continuing over a period of time.  In that regard, the Plaintiffs' failure to report forms the basis for the District's overriding interest in prohibiting the Plaintiffs from interacting with the children who were allegedly abused under their watch, or the children's parents.  Similarly, the District is obligated to try to prevent anyone else involved with the investigation from being placed at risk.

Insofar as plaintiffs claim they were denied access to the press, in the first instance, there is nothing in the statement itself from the School District which prohibits any interaction with the press.  Nevertheless, no public purpose would be served by these individuals telling the press what they were forced to tell the District Attorney.  It would not further the investigation and would probably inhibit it.  This claim is really a red herring as the only reason Plaintiffs would wish to talk to the press would be to pursue their personal interest of distancing themselves from any claim of wrongdoing.  Plaintiffs acknowledge that the District was concerned that "Plaintiffs would also communicate their said concerns to the parents of their

10

autistic students and/or the media." It is axiomatic that permitting Plaintiffs to discuss the matter

with the students or parents would likely have a serious impact on the criminal investigation.

The District has an interest in ensuring that the alleged victims' testimony is not influenced and

that the alleged perpetrators do not gain an advantage in creating a defense.

Altogether, these interests form the basis for sustaining the District's burden of

showing "likely interference" with the functioning of the workplace. See Heil v. Santoro, 147

F.3d 103, 108 (2d Cir.1998). Certainly these are also interests which outweigh Plaintiffs' desire

to protect their image, thereby warranting the District directive. See id. (defendants' investigation

and filing of charges against plaintiff did not constitute retaliation for his speaking out on matters

of public concern where defendants were concerned about how he obtained a confidential village

memorandum that he had attached to an unfair labor practice charge filed with a state agency).

Accordingly, Plaintiffs cannot overcome the District's burden of demonstrating its need for

exercising control over their speech, and the Complaint should be dismissed.


## POINT III

### THIS ACTION SHOULD BE DISMISSED
### WITH RESPECT TO THE INDIVIDUAL DEFENDANTS

A.      The Complaint Fails to Plead Any Allegation of
        Personal Involvement of Defendants Reidy and Dealleaume

This case should be dismissed with respect to all of the individual defendants. Of

particular significance, however, is the fact that the Complaint lacks any allegation that Mr.

Reidy and Ms. Dealleaume had any personal involvement in the alleged deprivation of Plaintiffs'

constitutional rights. On this ground alone the Complaint should be dismissed as against those

two individuals.

To be sure, it is well-established that "[i]n order to succeed on a claim under Section 1983, a plaintiff must establish personal involvement in the alleged constitutional deprivation by each defendant." <u>Yant v. Scholack</u>, 1998 WL 157053, *7 (S.D.N.Y. 1998); <u>see also</u> <u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995); <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994). A supervisory official cannot be held liable under Section 1983 on a theory of respondeat superior. <u>Gan v. City of New York</u>, 996 F.2d 522, 536 (2d Cir. 1993) (citing <u>Monell v. Department of Soc. Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). Nor may he be held liable merely because he occupies a high position in the chain of command. <u>Colon</u>, 58 F.3d at 874. The personal involvement of a supervisory defendant may be shown only by evidence that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring.

<u>Id.</u> at 873; <u>see also</u> <u>Tierney v. City of New York</u>, 2007 WL 895133, *20 (S.D.N.Y. 2007). Further, "[b]road, conclusory allegations that a high-ranking defendant was informed of an incident are insufficient to impose liability." <u>Gibson v. Commissioner of Mental Health</u>, 2006 WL 1234971, *5 (S.D.N.Y. 2006).

Nowhere in the Complaint do plaintiffs allege that defendants Reidy and Dealleaume personally participated in the alleged wrongful acts, failed to remedy a wrong after discovering it, created a policy or custom under which unconstitutional practices occurred, were grossly negligent in managing subordinates, or exhibited deliberate indifference by failing to act on information indicating that unconstitutional practices were occurring. Plaintiffs' only references to Reidy and Dealleaume are in Paragraphs 8, 9 and 10, where they state that after expressing concerns about their colleagues' behavior "to the Defendants," "Defendants ordered Plaintiffs to reiterate their complaints" to the police, and then "Quartararo, acting on behalf of himself and his co-defendants on that date issued to each Plaintiff a letter advising" of their suspension with pay. These statements do not even allege Reidy and Dealleaume knew of the alleged constitutional violation much less contain the specificity of personal involvement necessary to claim an award of damages against them under § 1983. See e.g. Shomo v. City of New York, 2005 WL 756834, *7 (S.D.N.Y. 2005) (insufficient allegation of personal involvement where plaintiff alleged that although Fraser and Perry were aware of the violations they did nothing to protect him, but did not adequately state that Fraser and Perry were aware of the violations he alleged, did not indicate when he complained to their offices, or what the content of the complaint was, did not explain how Fraser and Perry were responsible, directly or indirectly, for the acts of the other named defendants, or the prevailing conditions that contributed to the plaintiff's injuries); cf. Gibson, supra at *7 (claim that individual defendant "[a]s unit chief failed intervene to stop the amount of abuse against patients by staff treatment assistants or punish the wrong doers [sic]" sufficed as allegation of personal involvement); Jean-Laurent v. Wilkerson, 438 F.Supp.2d 318, 326 (S.D.N.Y. 2006) (allegation that Horn

13

"expressly authorized ... [corrections officers] to maintain a custom practice that authorized the use of physical force against inmates without just cause" fell into the third <u>Colon</u> category and thus properly stated a claim that Horn was personally involved in violating plaintiff's constitutional rights).

Accordingly, the Complaint as it relates to Reidy and Dealleaume should be dismissed.

B.    All of the Individual Defendants are Protected
by the Doctrine of Qualified Immunity

In addition, all of the individual defendants are protected by the doctrine of qualified immunity. The issue of the individual Defendants' qualified immunity may be decided as a matter of law without any discovery. Indeed, "the court should decide [the issue of qualified immunity] at the earliest possible stage of the litigation." <u>Liu v. New York City Police Dep't</u>, 216 A.D.2d 67, 627 N.Y.S.2d 683, 685-86 (1st Dep't) , <u>lv</u> <u>denied</u>, 87 N.Y.2d 802 (1995), <u>cert.</u> <u>denied</u>, 517 U.S. 1167 (1996); <u>see also</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). This principle is consistent with the rationale that "qualified immunity is an immunity from suit rather than a mere defense to liability." <u>Dasher v. Hughes</u>, 2000 WL 726865, *7 (S.D.N.Y. 2000).

The only occasion where qualified immunity will not shield performance is when the alleged act either (a) was in violation of clearly established law, or (b) was plainly incompetent." <u>Castro v. U.S.</u>, 34 F.3d 106, 112 (2d Cir. 1994); <u>see</u> <u>also</u> <u>Hunter v. Bryant</u>, 502 U.S. at 227, 112 S.Ct. at 537 ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"), <u>quoting</u> <u>Malley v. Briggs</u>, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271

14

(1986).

Here, the allegation that Quartararo, in his capacity as the District's Assistant Superintendent, even if on behalf of the other individual Defendants, issued the suspension letter to four of the District's employees hardly requires a factual resolution as to whether immunity is available. Prohibiting Plaintiffs from speaking on this matter during their suspension "did not violate 'clearly established' rights of which a reasonable person would have known" which would give rise to a First Amendment claim. See Soares v. Connecticut, 8 F.3d 917, 920 (2d Cir.1993). As demonstrated above, the federally protected right Defendants are accused of violating was not clearly established at the time of the alleged violation, as Plaintiffs did not possess the right to speak on any employment-related matter of their choice, much less one of personal interest. Even if Plaintiffs did possess such a right, however, as set forth above, it can easily be said that no reasonable trier of fact could find that Quartararo's belief that he was not violating Plaintiffs' constitutional rights was unreasonable. See e.g. Segal v. Crotty, 352 F.Supp.2d 424, 428 (S.D.N.Y. 2005) (because Bello had probable cause to arrest plaintiff, there was no Federal constitutional violation, and therefore no reasonable trier of fact could conclude otherwise.).

Nor could there be an issue of Quartararo's competence. Obviously a competent Assistant Superintendent – or Superintendent of Schools or Principal for that matter –would discipline the District's employees where it appears that they acted unprofessionally in failing to report sooner egregious activities which were directed toward students. In fact, a government employer's prohibition of its employees from speaking on a matter which is currently undergoing a criminal or internal investigation is customary. See e.g. Babb v. Chertoff, 2006 WL 1371679,

15

\*5 (D.D.C. 2006); <u>Patches v. City of Phoenix</u>, 68 Fed.Appx. 772, 775 (9th Cir. 2003); <u>Shelton Police Union, Inc. v. Voccola</u>, 125 F.Supp.2d 604, 624-25 (D.Conn. 2001).

Accordingly, qualified immunity should be found as a matter of law, and, at a minimum, the lawsuit should be dismissed as against Mr. Quartararo, Mr. Reidy and Ms. Dealleaume. <u>See</u> <u>Genas v. State of N.Y. Dept. of Correctional Services</u>, 75 F.3d 82, 830 (2d Cir. 1996).

<u>CONCLUSION</u>

In view of the foregoing, it is respectfully requested that this Court dismiss the Complaint in its entirety, and award such other and further relief as it may deem just and proper.

Dated: New York, New York
July 27, 2007

Respectfully submitted,

SNITOW KANFER HOLTZER & MILLUS, LLP

By: _____
Paul F. Millus, Esq. (PM-8240)
575 Lexington Avenue, 14th Floor
New York, New York 10022
(212) 317-8500

*Attorneys for Defendants Vincent Quartararo,*
*Robert J. Reidy, Jr., Carol Dealleaume and*
*Mahopac Central School District*

M:\CLIENT\444\01\MOL final.wpd

16