UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

JOANNE SASSONE, MELANIE PARTELOW
NANNA, KRISTY NICKERSON, and
MARY BETH SANGALLI,

                   Plaintiffs,

-against-

VINCENT QUARTARARO, individually,
ROBERT J. REIDY, Jr., individually,
CAROL DEALLEAUME, individually, and
MAHOPAC CENTRAL SCHOOL DISTRICT,

                   Defendants.
--------------------------------------------------------x

07cv4142
07 Civ. 4142 (MDF)
(WP 4)

**FIRST AMENDED COMPLAINT**

**Jury Trial Demanded**

Plaintiffs JOANNE SASSONE, MELANIE PARTELOW NANNA, KRISTI NICKERSON, and MARY BETH SANGALLI, by their attorneys Lovett & Gould, LLP, for their first amended complaint respectfully state:

## NATURE OF THE ACTION

1. This is an action for compensatory and punitive damages, proximately resulting from the conduct of Defendants as jointly engaged in by them under color of New York State law, for violations of Plaintiff's rights as guaranteed by reason of the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §1983.

## JURISDICTION

2. The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343.

1

## THE PARTIES

3. Plaintiffs JOANNE SASSONE, MELANIE PARTELOW NANNA, KRISTI NICKERSON, and MARY BETH SANGALLI are citizens of the United States, domiciliaries of the State of New York, and residents of the Northern Counties. Each Plaintiff is employed by the Mahopac Central School District in the title of "Teacher's Aide" and, prior to their below-referenced suspension from employment, each Plaintiff worked with autistic children in the Mahopac Falls Elementary School's prestigious "Bridge Program". With respect to the matters reported by the Plaintiffs to Defendants, set forth *infra*, none of the Plaintiffs had any job responsibility and/or duty to make the subject report(s).

4. Defendant VINCENT QUARTARARO (hereinafter "Quartararo"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as the Assistant Superintendent for the Defendant School District.

5. Defendant ROBERT J. REIDY, Jr. (hereinafter "Reidy"), who is sued in his individual and personal capacities only, at all times relevant to this complaint was employed as the Superintendent of Schools for the Defendant District.

6. Defendant CAROL DeALLEAUME (hereinafter "DeAlleaume"), who is sued in her individual and personal capacities only, at all times relevant to this complaint was employed as an Acting Interim Principal by the Defendant District.

7. Defendant MAHOPAC CENTRAL SCHOOL DISTRICT is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State.

## THE FACTS

8. In or about March of 2007 Plaintiffs non-disruptively expressed concerns to the Defendants regarding classroom conduct engaged in by Special Education Teacher Tammy Card (hereinafter "Card"), Speech Therapist Joyce Spiegel (hereinafter "Spiegel"), and Teacher Aides Joe Levy (hereinafter "Levy"), Laurie Reynolds (hereinafter "Reynolds"), and Sherry Sreitas (hereinafter "Sreitas"). In that connection the Plaintiff's truthfully related *inter alia* their personal observations of:

    a. Card, Levy and Reynolds' use, in the classroom of degrading nicknames for the autistic children for whom they were responsible, including: "Sloth", "Poor Thing", "Drool Machine", "Nico Nico Pancake Freako", "Mosquito", "Old Man", "Froggy", "Satan's Child", "Chicken Butt" and *inter alia* "Rodent",

    b. Levy's slapping Card's buttocks and massaging her in front of their students,

    c. Spiegel and Levy giving each other massages in front of their students,

    d. Levy grabbing Sreitas' breasts in front of their students,

    e. Spiegel's exposing her breasts to their students while announcing that she wanted to "brighten your day";

    f. Spiegel attired in a crocheted blouse, without a bra, exposing her nipples to their students,

    g. Spiegel falsifying school records so as to give the false impression that she provided speech therapy to their students,

    h. Levy and Reynolds engaging in sex-related discussions in front of their

students, and, *inter alia*,

i. Levy and Reynolds' altering one of the autistic child's manually operated "communication device" [which that child was supposed to use to respond to questions by "speaking": "I am here" and/or "Hello everyone") so that when the child used the device it instead would "say": "I'm sitting right here, can't you see me stupid" and "Hello, I am here today, everybody go away".

9. Following Plaintiffs' expression of the concerns referenced in paragraph "8", *supra*, Defendants ordered them to reiterate their complaints to the Carmel Police -- as a result of which Spiegel, Card, Levy and Reynolds were, following the completion of a criminal investigation in the Spring of 2007, arrested and charged with various crimes.

10. Out of concern that Plaintiffs would also communicate their observations to the parents of their autistic students and/or the media, Defendants agreed on April 6, 2007, to impose upon them a "gag" order of indefinite duration. In that connection Quartararo acting on behalf of himself and his co-defendants on that date issued to each Plaintiff a letter advising in pertinent respect:

> "You are hereby placed on administrative reassignment to home, effective April 10, 2007, with full pay and benefits, pending the District's investigation into certain issues which have recently come to our attention in connection with your employment.
>
> You are not allowed on school grounds or at school sponsored events until further notice. You are also not allowed to have any contact with students or their parents until further notice."

4

11. In fact Defendants' representation that there was a District investigation, either underway and/or to be commenced, with respect to Plaintiffs' employment was: i) false; ii) pretextual; iii) a calculated means of justifying what the Defendants later in writing conceded (as to the "administrative reassignment") was in fact punitive "discipline[ary]" action; intended to intimidate Plaintiffs and to chill them in the exercise of their First Amendment right to publicly and non-disruptively express their concerns about the systemic criminal wrong doing and the injuries/humiliation suffered by the autistic children.

12. At no time did Plaintiffs' conduct and/or speech regarding the criminal wrong doing in any way impair and/or potentially impair the effective and/or efficient operation of the District -- a circumstance known to each of the Defendants. At no time did Defendants or any of them have any factual basis to in good faith believe that Plaintiffs':

    a. Presence in the classroom, following their reports of criminal wrong doing, would in any way adversely affect the District and/or its delivery of educational services to any of its students;

    b. Communications and/or opinions regarding the criminal wrong doing would in any way interfere with either: a) the already completed criminal investigation; b) and/or the non-existent "investigation" falsely claimed to be forthcoming by the Defendants;

    c. Communications and/or opinions regarding the criminal wrong doing would in any way influence and/or improperly influence the testimony of student victims and/or provide otherwise unavailable information to the District staff that had engaged in the criminal wrong doing; and/or,

d. Had themselves engaged in any wrong doing by not earlier reporting the crimes committed by their co-workers -- a circumstance confirmed by the Defendants' failure to take any remedial and/or investigative and/or punitive and/or disciplinary action against identically situated (to Plaintiffs) members of the District staff who had actual knowledge of the criminal wrong doing and at no time reported it to Defendants or any of them.

13. By reason of that gag order, the imposition of the forced administrative reassignment to home (*de facto* imposing upon them house arrest), and the threat -- albeit false -- that each of the Plaintiffs was under and/or going to be under investigation by the District and potentially subject to job termination, each of the Plaintiffs each was silenced and therefore: did not communicate with any of their autistic students regarding their concerns about the maltreatment to which they were subjected; did not communicate with the parents/guardians of any of those students in order to apprise them of the despicable treatment accorded their children; and did not communicate with the media regarding the outrageous treatment accorded those students.

14. As a result of Defendants' chilling of Plaintiffs' First Amendment protected rights to free speech, on May 29, 2007, Plaintiffs filed this action seeking compensatory and punitive damages.

15. In retaliation for Plaintiffs' expressions of concern regarding criminal wrong doing as engaged in by their co-workers and/or because of the filing of this action Defendants on or about June 19, 2007, agreed to take further punitive action against the Plaintiffs. In that connection the Defendants acting through counsel notified Plaintiffs' union representative that Plaintiffs Nanna, Nickerson and Sengali would not be permitted

6

to work for the District during the summer -- work that each of those Plaintiffs had for years previously engaged in and by reason of which each earned several thousands of dollars in additional compensation.

16. On or about August 27, 2007, Defendants in writing directed each of the Plaintiffs to report two days thereafter to the District's elementary school library on the calculatedly deceitful premise that they were going to discuss their "employment" with the District.

17. On August 29, 2007, each of the Plaintiffs was subjected to a superficial interview several minutes in duration at which time they were separately asked a series of "yes" "no" questions regarding their original report as to criminal wrong doing. The interviews elicited no new information, comprised a reiteration of data months earlier provided by the Plaintiffs to the Defendants, and were conducted so as to after-the-fact create the false appearance that Plaintiffs were actually the subjects of investigation.

18. Subsequent to these perfunctory interviews each Plaintiff was informed by Defendants as to their work assignments for the 2007-2008 school years. In that connection and in furtherance of Defendants' retaliation against Plaintiffs because of their reports of criminal wrong doing and/or their filing of this action:

    a. None of the Plaintiffs was permitted to return to the prestigious Bridge Program;

    b. Each of the Plaintiffs was directed to assume degrading and grossly diminished job responsibilities than they previously had in the Bridge Program; and,

    c. Each of the Plaintiffs was assigned to a new work location by reason of which Defendants intentionally stigmatized them and deliberately signaled to Plaintiffs'

co-workers that they were being penalized for speaking out regarding the matters of public concern referenced *supra*.

19. As a proximate result of Defendants' intentional retaliatory conduct Plaintiffs have been: chilled in the exercise of their First Amendment protected rights; punished for their exercise of those rights; caused monetary losses; caused to suffer public humiliation; public embarrassment; anxiety; emotional upset; and otherwise have been rendered sick and sore.

## AS AND FOR A FIRST CLAIM

20. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

21. Under the premises Defendants' conduct and retaliatory conduct violated Plaintiff's rights as guaranteed by the First Amendment to the United States Constitution, 42 U.S.C. §1983.

## AS AND FOR A SECOND CLAIM

22. Repeat and reallege as if fully set forth the allegations of fact contained in paragraphs "1" to "19", inclusive.

23. Since Plaintiffs' identically situated co-workers, who had actual knowledge of the at-issue criminal wrong-doing but did not report it, were not subjected to forced administrative reassignment, were not subjected to a gag order, were not threatened with an investigation concerning their employment, were not denied summer employment and *inter alia* were not subjected to job reassignments with diminution of job

8

duties/responsibilities, the disparate treatment to which Defendants intentionally subjected Plaintiffs violated their rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, 42 U.S.C. §1983.

WHEREFORE a judgment is respectfully requested:

a. Awarding against the individually named defendants such punitive damages as the jury may impose,

b. Awarding against all defendants such compensatory damages as the jury may determine,

c. Declaring unconstitutional and permanently enjoining Defendants' institution/maintenance of the gag order,

d. Awarding reasonable attorney's fees and costs, and,

e. Granting such other and further relief as to the Court seems just and proper.

Dated: White Plains, N.Y.
September 7, 2007

LOVETT & GOULD, LLP.
By: _____
Jonathan Lovett (4854)
Attorneys for Plaintiffs
222 Bloomingdale Road
White Plains, N.Y. 10605
914-428-8401