UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JOANNE SASSONE, MELANIE PARTELOW    :
NANNA, KRISTY NICKERSON, and MARY
BETH SANGALLI,    :

               Plaintiffs,    :   07 CV. 4142 (KMK/MDF)

     -against-    :

VINCENT QUARTARARO, individually,    :
ROBERT J. REIDY, Jr., individually, CAROL
DEALLEAUME, individually, and MAHOPAC    :
CENTRAL SCHOOL DISTRICT,

                        :

             Defendants.    :

                        :
-------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

SNITOW KANFER HOLTZER & MILLUS, LLP
575 Lexington Avenue, 14th Floor
New York, New York 10022
(212) 317-8500

*Attorneys for Defendants Vincent Quartararo,*
*Robert J. Reidy, Jr., Carol Dealleaume and*
*Mahopac Central School District*

Of Counsel:
     Paul F. Millus
     Virginia K. Trunkes

# TABLE OF CONTENTS

Page

TABLE OF CASES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Facts Common to Both Complaints . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    The Amended Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    POINT I      PLAINTIFFS HAVE NOT PROPERLY STATED A CLAIM OF
                    VIOLATION OF THEIR FIRST AMENDMENT RIGHTS . . . . . . . . . . 7

          A.    Plaintiffs' Amended Complaint Does Not Make Out a Claim that
              Defendants Have Unlawfully Chilled Protected Speech . . . . . . . . . . . . . 8

          B.    Plaintiffs' Amended Complaint Does Not Make Out a Claim of
              Retaliation Relating to the Suspension and Reassignment as the District
              Would Have Taken the Same Action Absent Protected Speech . . . . . . . 12

          C.    The District's Justification for Suspending and Transferring Plaintiffs
              Outweighed any Right to Speech . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

    POINT II    THE AMENDED COMPLAINT DOES NOT
                   PROPERLY STATE A CLAIM FOR VIOLATION
                   OF THE EQUAL PROTECTION CLAUSE . . . . . . . . . . . . . . . . . . . . . . 18

    POINT III   THIS ACTION SHOULD BE DISMISSED
                   WITH RESPECT TO THE INDIVIDUAL
                   DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A.    The Complaint Fails to Plead Any Allegation of Personal
Involvement of Defendants Reidy and Dealleaume . . . . . . . . . . . 20

B.    All of the Individual Defendants are Protected by
the Doctrine of Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF CASES

Page(s)

Abramson v. Pataki,
    278 F.3d 93, 99 (2d Cir.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Adlerstein v. Board of Educ. of City of New York,
    64 N.Y.2d 90, 100, 485 N.Y.S.2d 1, 474 N.E.2d 209 (1984) . . . . . . . . . . . . . . . . . . . . 14

Babb v. Chertoff,
    2006 WL 1371679, *5 (D.D.C. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25

Baron v. Rabinovici,
    2006 WL 1318426 (E.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, fn.1

Bernheim v. Litt,
    79 F.3d 318 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Cahill v. O'Donnell,
    75 F.Supp.2d 264 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . once

Castro v. U.S.,
    34 F.3d 106, 112 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cobb v. Pozzi,
    363 F.3d 89, 102 (2d Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

Colon v. Coughlin,
    58 F.3d 865 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Conley v. Gibson,
    355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . 7

Connick v. Myers,
    461 U.S. 138, 103 S.Ct. 1684 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 15

Costello v. McEnery,
    767 F.Supp. 72, 75 (S.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Dasher v. Hughes,
    2000 WL 726865, *7 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

iii

## TABLE OF CASES

Forte v. Mills,
    250 A.D.2d 882, 672 N.Y.S.2d 497 (3d Dep't 1998) ........................... 14

Gan v. City of New York,
    996 F.2d 522 (2d Cir. 1993) ............................................... 21

Genas v. State of N.Y. Dept. of Correctional Services,
    75 F.3d 82 (2d Cir. 1996) ................................................. 25

Gibson v. Commissioner of Mental Health,
    2006 WL 1234971, *5 (S.D.N.Y. 2006) ................................. 21, 22

Graham v. Long Island R.R.,
    230 F.3d 34, 39 (2d Cir.2000) ............................................. 19

Grassel v. Board of Educ. of City of New York,
    301 A.D.2d 498, 499, 753 N.Y.S.2d 138 (2d Dep't. 2003) .................. 22, 24

Harlen Assoc. v. Incorporated Vil. of Mineola,
    273 F.3d 494, 499 (2d Cir. 2001) .......................................... 19

Heil v. Santoro,
    147 F.3d 103 (2d Cir.1998) ............................................... 17

Holt v. Board of Educ. of Webutuck Cent. School Dist.,
    52 N.Y.2d 625, 632, 439 N.Y.S.2d 839, 422 N.E.2d 499 (1981). ............. 13

Hunter v. Bryant,
    502 U.S. 224, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) ...................... 23

Jean-Laurent v. Wilkerson,
    438 F.Supp.2d 318 (S.D.N.Y. 2006) ...................................... 23

Jeffries v. Harleston,
    52 F.3d 9, 13 (2d Cir.1995) ............................................... 18

Jerry v. Board of Ed. of City School Dist. of City of Syracuse,
    35 N.Y.2d 534, 541, 324 N.E.2d 106 (1974) ............................... 13

Johnson v. Ganim,
    342 F.3d 105, 114 (2d Cir. 2003) .......................................... 16

iv

## TABLE OF CASES

Kantha v. Blue,
    262 F.Supp.2d 90, 101 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

LeClair v. Saunders,
    627 F.2d 606, 608 (2d Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Lewis v. Cowen,
    165 F.3d 154, 163-64 (2d Cir. 1999), cert. denied,
    528 U.S. 823, 120 S.Ct. 70, 145 L.Ed.2d 60 (1999) . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

Liu v. New York City Police Dep't,
    216 A.D.2d 67, 627 N.Y.S.2d 683 (1st Dep't) , lv denied,
    87 N.Y.2d 802 (1995), cert. denied, 517 U.S. 1167 (1996) . . . . . . . . . . . . . . . . . . . . . . 23

Malley v. Briggs,
    475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 24

Mandell v. County of Suffolk,
    316 F.3d 368, 382-83 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

Marinoff v. City College of New York,
    357 F.Supp.2d 672, 683-85 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

Melzer v. Board of Education of City School Dist. of City of New York,
    336 F.3d 185 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 16

Monell v. Department of Soc. Servs.,
    436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,
    429 U.S. 274, 283-87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) . . . . . . . . . . . . . . . . . . . 8, 12

Patches v. City of Phoenix,
    68 Fed.Appx. 772 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25

Pickering v. Bd. of Educ.,
    391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) . . . . . . . . . . . . . . . . . . . . . . 15

Piesco v. City of New York, Dept. of Personnel,
    933 F.2d 1149 (2d Cir.), cert. denied, 502 U.S. 921,
    112 S.Ct. 331, 116 L.Ed.2d 272 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

v

## TABLE OF CASES

Puentes v. Board of Ed. of Union Free School Dist. No. 21 of Town of Bethpage,
     24 N.Y.2d 996, 302 N.Y.S.2d 824, 250 N.E.2d 232 (1969) . . . . . . . . . . . . . . . . . . . . . . 11

Rao v. New York City Health and Hospitals Corp.,
     905 F.Supp. 1236 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rookard v. Health and Hospitals Corp.,
     710 F.2d 41 (2d Cir.1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Saulpaugh v. Monroe Community Hosp.,
     4 F.3d 134 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Sebold v. City of Middletown,
     2007 WL 2782527 * 26 (D.Conn. Sep 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Scahill v. Greece Cent. School Dist.,
     2 N.Y.3d 754, 756, 811 N.E.2d 33, 778 N.Y.S.2d 771 (2004) . . . . . . . . . . . . . . . . . . 14

Segal v. Crotty,
     352 F.Supp.2d 424 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Shelton Police Union, Inc. v. Voccola,
     125 F.Supp.2d 604 (D.Conn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 25

Shomo v. City of New York,
     2005 WL 756834, *7 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Soares v. Connecticut,
     8 F.3d 917 (2d Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Tierney v. City of New York,
     2007 WL 895133, *20 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Armstrong,
     517 U.S. 456, 469, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) . . . . . . . . . . . . . . . . . . . 20

Vasbinder v. Ambach,
     926 F.2d 1333, 1340, 1341 (2d Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Verri v. Nanna,
     972 F.Supp. 773 (S.D.N.Y.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## TABLE OF CASES

Waters v. Churchill,
    511 U.S. 661, 114 S.Ct. 1878 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

Weintraub v. Board of Educ. of City of New York,
    423 F. Supp. 2d 38, 208 Ed. Law Rep. 435 (E.D. N.Y. 2006),
    on reconsideration in part, 2007 WL 1549138 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . 10

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Yant v. Scholack,
    1998 WL 157053, *7 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

vii

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

JOANNE SASSONE, MELANIE PARTELOW    :
NANNA, KRISTY NICKERSON, and MARY
BETH SANGALLI,                      :

              Plaintiffs,        :    07 CV. 4142 (KMK/MDF)

       -against-                     :

VINCENT QUARTARARO, individually,   :
ROBERT J. REIDY, Jr., individually, CAROL
DEALLEAUME, individually, and MAHOPAC   :
CENTRAL SCHOOL DISTRICT,

                   :

             Defendants.        :

------------------------------------------------------------X

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE AMENDED COMPLAINT

PRELIMINARY STATEMENT

      In this purported civil rights action, defendants Vincent Quartararo, individually,

Robert J. Reidy, Jr., individually, Carol Dealleaume, individually, and Mahopac Central School

District (collectively, "Defendants") submit this motion pursuant to Federal Rules of Civil

Procedure 12(b)(6) for failure to state a cause of action.

      Plaintiffs have commenced this action against the Mahopac Central School

District ("the District") and three of its employees in connection with the alleged violation of

Plaintiffs' constitutional rights.  Distilled to its essence, the Amended Complaint alleges that

Plaintiffs, who are themselves employees of the District, had reported to Defendants the

commission of various instances of alleged wrongdoing by certain fellow colleagues against

students in the "Bridge Program" over a period of time.  According to the Amended Complaint,

following Plaintiffs' report, Defendants instructed them to relate these concerns to the local

police.  A criminal investigation ensued, and Plaintiffs' colleagues were arrested and charged.

Plaintiffs allege that thereafter, the Defendants stated that they were investigating certain

employment issues relating to Plaintiffs, and that during the interim, Plaintiffs were suspended

with pay, and prohibited from expressing their observations of the wrongdoing to students'

parents or the media.  Plaintiffs also allege that the employment investigation was pretextual, and

that Defendants' representation of such was in reality punitive, intended to intimidate them and

prevent them from exercising their First Amendment rights.

Plaintiffs further allege that Defendants have retaliated against them by preventing

them from working over the summer, and by denying them positions in the Bridge Program.

Plaintiffs claim that Defendants did not treat similarly situated employees in this same manner,

and therefore Defendants violated their Fourteen Amendment rights as guaranteed by the Equal

Protection Clause.  As demonstrated in greater detail below, the theories in the Amended

Complaint do not satisfy the requirements for stating a claim for First Amendment or Equal

Protection violation, or one which would overcome the qualified immunity afforded the

individual defendants.

The Amended Complaint represents Plaintiffs' second attempt to state First

Amendment claims.  Plaintiffs initially brought this action alleging that Defendants' disciplinary

suspension and prohibition of their speaking on a matter which was the subject of a criminal

investigation prevented them from conveying their innocence to the public.  Observing that the

complaint failed to state any claim for which legal relief could be granted, Defendants moved to

dismiss.  In response to that application, Plaintiffs filed the Amended Complaint, thus conceding that the original pleading was patently flawed.

The claims in the Amended Complaint, however, suffer from the same deficiencies as those in the original complaint and Plaintiffs' attempt to enhance the original pleading is entirely unavailing.  In addition, the theory of damages Plaintiffs first advanced in their original complaint, which constitutes an admission,[1] actually conflicts with their damages theory set forth in the Amended Complaint.  This hit-or-miss litigation strategy confirms what is perfectly obvious:  no matter how Plaintiffs try to cast their complaint into First Amendment claims, it cannot be accomplished.  And, in view of the fact that the new legal theories are incurably flawed and because the Amended Complaint represents Plaintiffs' second "bite at the apple", any amendment of the pleading would be futile, thus compelling dismissal of the action with prejudice.

BACKGROUND

A.    <u>Facts Common to Both Complaints</u>

Plaintiffs bring this action for compensatory and punitive damages in connection with disciplinary action take against them, and in particular that barring them from speaking on a matter which is currently the subject of a criminal investigation.  Plaintiffs assert their first cause of action under the First Amendment to the United States Constitution, pursuant to 42 U.S.C. § 1983. (Am. Compl. ¶ 1)

Plaintiffs allege that they are Teacher's Aides who, until their suspension and

---

[1]    Allegations in the original pleading constitute admissions of a party opponent that are admissible against the plaintiffs.  <u>See</u> <u>Baron v. Rabinovici</u>, 2006 WL 1318426 (E.D.N.Y. 2006).

3

reassignment, worked at the Mahopac Falls Elementary School with autistic children in the
school's "Bridge Program." (Am. Compl. ¶ 3) According to the pleading, in March 2007,
Plaintiffs "expressed concerns to the Defendants" about certain statements and actions taken by
five of their colleagues during their work with the autistic students. (Am. Compl. ¶ 8)[2]
Specifically, the Amended Complaint states that they related to Defendants their personal
observations of, *inter alia*:

- their colleagues' use, in the classroom, of various degrading nicknames for the autistic children;

- one colleague's slapping another colleague's buttocks and massaging her in front of their students;

- one colleague's grabbing another colleague's breasts in front of their students;

- one colleague's exposing her breasts to another colleague in front of their students;

- one colleague's exposing her nipples through a crocheted blouse to her students;

- two colleagues' engaging in sex-related discussions in front of their students;

- "Levy and Reynolds' altering of [an] autistic child's manually operated 'communication device' [which that child was supposed to use to respond to questions by 'speaking': 'I am here' and/or 'Hello everyone'] so that when the child used the device it instead would 'say': 'I'm sitting right here, can't you friggin see me' and 'Hello, I am here today, everybody go away'; and

- one colleague falsified school records so as to give the false impression that she provided speech therapy to her students.

(Am. Compl. ¶ 8).

     Thereafter, "Defendants ordered Plaintiffs to reiterate their complaints" to the

---

[2] It is undisputed that, as alleged by Plaintiffs (Am. Compl. ¶¶ 4-6), Defendant Quartararo is the District's Assistant Superintendent, Defendant Reidy is the District's Superintendent of Schools and Defendant DeAlleaume is a District Acting Interim Principal.

police. (Am. Compl. ¶ 9)  Plaintiffs complied, and as a result, several of those other colleagues were arrested and charged. (Am. Compl. ¶ 9).

The Amended Complaint continues insofar as it alleges that on April 6, 2007, "[o]ut of concern that Plaintiffs would also communicate their observations to the parents of their autistic students and/or the media," "Quartararo, acting on behalf of himself and his co-defendants ... issued to each Plaintiff a letter advising," *inter alia*:

> You are hereby placed on administrative reassignment to home, effective April 10, 2007, with full pay and benefits, pending the District's investigation into certain issues which have recently come to our attention in connection with your employment.
>
> You are not allowed on school grounds or at school sponsored events until further notice.  You are also not allowed to have any contact with students or their parents until further notice. (Am. Compl. ¶ 10).

B.    The Amended Complaint

Plaintiffs' new theory is that Defendants falsely and pretextually represented that there was a District employment investigation; that this representation "was in fact punitive "disciplin[ary]" action; and that Defendants intended to intimidate Plaintiffs and to chill them in the exercise of their First Amendment right to publicly and non-disruptively express their concerns about the systematic criminal wrong doing and the injuries/humiliation suffered by the autistic children." (Am. Compl. ¶ 11).  Thus, Plaintiffs are illogically claiming that notwithstanding their original reporting of the wrongdoing to the Defendants, and the Defendants' insistence that Plaintiffs relate the same to the police, Defendants violated their First Amendment right to discuss a subject which is a matter of public concern.  Considered chronologically, this makes no sense.  It is also in direct conflict with Plaintiffs' motive for

5

speaking out as portrayed in the original complaint, i.e., to protect their reputation.

Plaintiffs also allege that their desired speech would not impair and/or potentially impair the effective and/or efficient operation of the District. (Am. Compl. ¶ 12) Among other things, Plaintiffs aver that Defendants did not have a good faith basis to believe that Plaintiffs' "[c]ommunications and/or opinions regarding the criminal wrong doing" would interfere with the criminal investigation or Defendants' employment investigation. (Am. Compl. ¶ 12[b]) Plaintiffs contend that other colleagues also privy to the wrongdoing were not suspended. (Am. Compl. ¶ 12[d]) Plaintiffs suggest that they have been damaged because as a result of their forced silence, they

> did not communicate with any of their autistic students regarding their concerns about the maltreatment to which they were subjected; did not communicate with the parents/guardians of any of those students in order to apprise them of the despicable treatment accorded their children; and did not communicate with the media regarding the outrageous treatment accorded those students. (Am. Compl. ¶ 13)

Additionally, Plaintiffs urge that they were not permitted to work for the District during the summer, or to resume work with the Bridge Program or similarly respectable positions, due to Defendants' retaliation for their reports of wrongdoing and filing of this action. (Am. Compl. ¶¶ 15-18) According to the Amended Complaint, as a consequence of all of Defendants' actions, some of Plaintiffs' damages include "public humiliation; public embarrassment; anxiety; [and] emotional upset." (Am. Compl. ¶ 19). Thus, Plaintiffs maintain, Defendants are liable for violating their First Amendment rights and for violating their rights as guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

As demonstrated below, none of these allegations give rise to a § 1983 claim or

6

equal protection claim against the District or any other defendant and the pleading should be dismissed with prejudice.

## ARGUMENT

A motion to dismiss brought pursuant to Fed.R.Civ.P. 12(b)(6) may be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In considering a motion to dismiss, the court must accept all of the complaint's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir.2002).

As set forth below, accepting the allegations as true and affording Plaintiffs all favorable inferences, they have not properly stated claims that Defendants chilled their free speech, retaliated against them for exercising their free speech or unconstitutionally selected trem for disparate treatment. Accordingly, the Amended Complaint should be dismissed in its entirety.

## POINT I

### PLAINTIFFS HAVE NOT PROPERLY STATED A CLAIM OF VIOLATION OF THEIR FIRST AMENDMENT RIGHTS

In their first cause of action, Plaintiffs allege that "Defendants' conduct and retaliatory conduct violated [their First Amendment rights]." Although ambiguous, it is presumed that Plaintiffs are alleging that Defendants unlawfully "chilled" their speech by

instructing that they have no contact with the children or parents impacted by the alleged wrongdoing of their coworkers, and that they are also alleging that Defendants retaliated against them for initially reporting the alleged activity. As elaborated below, Plaintiffs have not made out a *prima facie* claim of either unlawful chilled speech or retaliation.

For Plaintiffs, as government employees, to prevail on their claim that defendants chilled their protected speech, they must be able to show that their desired speech is protected by the First Amendment. For speech of a government employee to be protected by the First Amendment:

> the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

Waters v. Churchill, 511 U.S. 661, 668, 114 S.Ct. 1878 (1994).

Similarly, to prevail on their First Amendment retaliation claim, plaintiffs will have to demonstrate that: (1) their speech was constitutionally protected, (2) they suffered an adverse employment decision, and (3) a causal connection exists between their protected speech and the adverse employment determination against them, so it can be said that their speech was a motivating factor in the determination. Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 283-87, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

A.    Plaintiffs' Amended Complaint Does Not Make Out a Claim that
      Defendants Have Unlawfully Chilled Protected Speech

It is well settled that "[a] public employee's right to freedom of speech is not absolute." Bernheim v. Litt, 79 F.3d 318, 324 (2d Cir. 1996). Of paramount importance is that the subject speech which is purportedly protected be on a matter of public concern. Whether a

particular instance of speech by a public employee relates to a matter of public concern or "matters only of personal interest." is a question of law to be answered by the court, Rao v. New York City Health and Hospitals Corp., 905 F.Supp. 1236, 1241 (S.D.N.Y. 1995), by reviewing the content, form and context of the speech at issue. Connick v. Myers, 461 U.S. 138, 147, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983) ("To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark – certainly every criticism directed at a public official – would plant the seed of a constitutional case."); see also Lewis v. Cowen, 165 F.3d 154, 162 (2d Cir. 1999) ("The "manner, time, and place" in which the speech occurs is important in determining whether it is protected").  "[A]bsent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." Connick, 461 U.S. at 147, 103 S.Ct. 1684.

Here, plaintiffs have failed to sufficiently allege that their chilled speech is protected.  Previously, in their original complaint, Plaintiffs alleged the desire to discuss matters of purely personal interest which did not constitute a matter of public concern and, consequently, were not entitled to constitutional protection. See Verri v. Nanna, 972 F.Supp. 773, 785 (S.D.N.Y.1997); see also Connick, supra.  Indeed, a desire to clear one's name and maintain one's reputation and standing with colleagues is not recognized as a public concern. See e.g. Cahill v. O'Donnell, 75 F.Supp.2d 264, 274 (S.D.N.Y. 1999).

Plaintiffs' new version of the alleged public interest about which they would have liked to have spoken is simply a transparent attempt to disguise a matter of private concern.  This is evidenced by Plaintiffs' inclusion as damages "public humiliation" and "public

9

embarrassment." (Am. Compl. ¶ 19).

Further, in positing that they should be able to speak to the autistic children "regarding their concerns about the maltreatment to which they were subjected" (Am. Compl. ¶ 13), Plaintiffs are merely suggesting that they have a right to engage in some form of counseling with the children. Nothing in the First Amendment affords public employees a right to engage in counseling or other form of heart-to-heart discussion with the government agency's clients. See e.g. Marinoff v. City College of New York, 357 F.Supp.2d 672, 683-85 (S.D.N.Y. 2005) (associate professor plaintiff's "philosophical counseling" activities constituted speech on matters of private concern).

Nor would Plaintiffs have a First Amendment right at this juncture to "apprise" the parents and media of the alleged treatment accorded the children. (Am. Compl. ¶ 13) Nothing in the First Amendment or the case law suggests that public employees have an unfettered right to continue reporting a matter after having already have reported it. Nor could there be an unfettered right to discuss a matter currently undergoing a criminal investigation outside of their chain of command and other relevant authorities. Indeed, in the cases where school government employees' concerns have been upheld as protected speech, they had articulated their concerns only through the appropriate channels. See e.g. Weintraub v. Board of Educ. of City of New York, 423 F. Supp. 2d 38, 208 Ed. Law Rep. 435 (E.D. N.Y. 2006), on reconsideration in part, 2007 WL 1549138 (E.D.N.Y. 2007) (elementary public school teacher's complaints to supervisor, regarding violence in classroom, communicated privately and through approved channels, were comments regarding matters of public concern, entitled to First Amendment protection); Puentes v. Board of Ed. of Union Free School Dist. No. 21 of Town of

Bethpage, 24 N.Y.2d 996, 302 N.Y.S.2d 824, 250 N.E.2d 232 (1969) (Board of education violated teacher's freedom of speech in suspending him without pay, on ground that he was guilty of conduct unbecoming a teacher in writing letter to teachers and administrators within school district criticizing failure of school administration to renew employment of probationary teacher); see also Vasbinder v. Ambach, 926 F.2d 1333, 1340, 1341 (2d Cir.1991) (an employee's contact with FBI regarding defendant's "potential fraud, theft, and misallocation of public funds" was a matter of public concern); Rookard v. Health and Hospitals Corp., 710 F.2d 41 (2d Cir.1983) ("An allegation of corrupt and wasteful practices at a large municipal hospital, made to the city official empowered to investigate such charges, obviously involves a matter of public concern").

The only reasonable inference created by a reading of the Amended Complaint is that Plaintiffs are disguising their original allegations – involving their concern about their reputation – as a First Amendment claim. Plaintiffs' desired speech should be determined to be on a private subject as a matter of law.

To be sure, in resolving a public employee's alleged violation of his First Amendment right to free speech, a court must "focus on the motive of the speaker and attempt to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999), cert. denied, 528 U.S. 823, 120 S.Ct. 70, 145 L.Ed.2d 60 (1999). The Amended Complaint fails to allege the public purpose to be served were Plaintiffs to discuss the alleged wrongdoing with the affected children, their parents and the media. Acknowledging that the Plaintiffs already reported the alleged wrongdoing, the Amended Complaint fails to indicate how the desired speech would

constitute an attempt to correct pervasive or systemic misconduct or illegal activity by the

District, or "to correct allegedly unlawful practices or bring them to public attention." <u>Kantha v.</u>

<u>Blue</u>, 262 F.Supp.2d 90, 101 (S.D.N.Y. 2003).  Rather, the clear, unequivocal inference is that

the Plaintiffs are merely seeking to repeat what they already properly reported so as to vindicate

personal interests.  They should therefore be precluded from maintaining their First Amendment

claim based on chilled speech. <u>See</u> <u>e.g.</u> <u>Saulpaugh v. Monroe Community Hosp.</u>, 4 F.3d 134 (2d

Cir. 1993) (there was no indication that the plaintiff "wanted to debate issues of sex

discrimination," that her suit sought "relief against pervasive or systemic misconduct by a public

agency or public officials," or that her suit was "part of an overall effort . . . to correct allegedly

unlawful practices or bring them to public attention").

B.   Plaintiffs' Amended Complaint Does Not Make Out a Claim of Retaliation
     Relating to the Suspension and Reassignment as the District Would Have
     <u>Taken the Same Action Absent Protected Speech</u>

        Despite the fact that Plaintiffs initially reported on a matter of public interest, and

even if the subject matter on which they desired to continue to speak were to constitute a matter

of public interest, it is evident that the protected speech was not the motivating factor in their

suspension and reassignment.  If an employee is prevented from speaking on a matter of concern

and/or adverse action is taken against him because of it, the public employer will still not be

liable if it demonstrates that it would have taken the same adverse action even absent the

protected speech. <u>Mandell v. County of Suffolk</u>, 316 F.3d 368, 382-83 (2d Cir. 2003); <u>Cobb v.</u>

<u>Pozzi</u>, 363 F.3d 89, 102 (2d Cir.2004); <u>Mt. Healthy City School District Board of Education v.</u>

<u>Doyle</u>, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

        Based simply on Plaintiffs' own allegations, there is a clear inference that these

events did not all take place in a day but rather occurred over a period of time.  There is also a clear inference that had the District become aware of any one of these alleged instances it would have preferred charges against the offending employees.  Thus, as Plaintiffs waited until the alleged commission of eight more of the purported acts after knowing of the first it should come as no surprise that they were suspended with pay pending further investigation into the allegations.

From the face of the Amended Complaint it is obvious that when confronted with the undisputed fact that Plaintiffs seemingly condoned extensive alleged wrongful behavior for a significant amount of time, the District would be compelled to exercise its discretion and remove Plaintiffs from an environment including the vulnerable children.  Plaintiffs do not state whether they have any tenure or other job protections.  Yet even if Plaintiffs were tenured teachers with ample job protections, they would be covered under Education Law § 3020, which was designed to protect tenured teachers "from arbitrary imposition of formal discipline," Holt v. Board of Educ. of Webutuck Cent. School Dist., 52 N.Y.2d 625, 632, 439 N.Y.S.2d 839, 422 N.E.2d 499 (1981).

That notwithstanding, Educ. Law § 3020-a affords a school district the unfettered right to suspend an employee with pay pending a hearing on charges, and until the final determination of the charges. Educ. Law § 3020-a(2)(b).  "The power of suspension is essential to the sound administration of the public school system – for the protection of the pupils in certain circumstances, for the protection of the teacher in other circumstances, and in many situations for the promotion of the best interests of the public." Jerry v. Board of Ed. of City School Dist. of City of Syracuse, 35 N.Y.2d 534, 541, 324 N.E.2d 106 (1974).

13

A school district also has the right to place tenured teachers into a non-teaching assignment at district headquarters, or in other school or district offices, pending the suspension. See e.g. Adlerstein v. Board of Educ. of City of New York, 64 N.Y.2d 90, 100, 485 N.Y.S.2d 1, 474 N.E.2d 209 (1984) (rejecting complaints by tenured art teacher and social studies teacher regarding nonteaching reassignments during suspension and pending disciplinary hearings).

Accordingly, even if Plaintiffs were accorded the greatest job protections, a review of the relevant statutory and case law and application of common sense reveals that upon being apprised of Plaintiffs' inaction while observing alleged criminal conduct involving children over a lengthy duration, the District would have certainly used its discretion in removing Plaintiffs from the location of this conduct and barring them from interacting with the parties involved. See e.g. Scahill v. Greece Cent. School Dist., 2 N.Y.3d 754, 756, 811 N.E.2d 33, 778 N.Y.S.2d 771 (2004) (the District's terminations of petitioners – maintenance mechanics – was not an abuse of discretion where it was based on petitioners' misconduct in selling at least 14,000 untaxed cigarettes on school property and using a school vehicle to store the cigarettes occurring over several months, thereby involving, *inter alia*, a violation of the District's trust and policy); Forte v. Mills, 250 A.D.2d 882, 672 N.Y.S.2d 497 (3d Dep't 1998) (decision of Commissioner of Education that physical education teacher engaged in conduct unbecoming a teacher by poking fourth and fifth grade female students in the back or snapping their bra straps was not arbitrary or capricious).

C.    The District's Justification for Suspending and Transferring Plaintiffs
      Outweighed any Right to Speech

Even if the Plaintiffs' desired speech was protected and it constituted a motivating factor for the adverse actions taken against them, as a matter of law Plaintiffs still could not

prevail on the First Amendment claim.

A public employer enjoys wide latitude in managing its office, see Connick , 461 U.S. at 146, and therefore has "a legitimate interest in regulating the speech of its employees that differs significantly from its interest in regulating the speech of people in general," Piesco v. City of New York, Dept. of Personnel, 933 F.2d 1149, 1155 (2d Cir.), cert. denied, 502 U.S. 921, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991). "[W]hen playing the role of employer, the state possesses 'greater leeway to control employees' speech that threatens to undermine its ability to perform its legitimate functions.' " Cobb, supra 363 F.3d at 101, quoting Lewis v. Cowen, 165 F.3d 154, 161 (2d Cir.1999); see also Waters v. Churchill, 511 U.S. 661, 671, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion) (noting that "the government as employer ... has far broader powers than does the government as sovereign").

Thus, even if an employee's desired speech does relate to a matter of public concern, the public employer may still avoid liability if it shows that the plaintiff's speech was likely to disrupt the government's activities to an extent that the employer's conduct outweighed the First Amendment value of the speech. Mandell, supra 316 F.3d at 382-83; see also Pickering v. Bd. of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) (explaining that court must balance the interests of the employee "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees"); Cobb, 363 F.3d at 102. A government employer's reasonable predictions of disruption are entitled to "substantial weight even when the speech involved is on a matter of public concern." Waters v. Churchill, supra 511 U.S. at 673.

This "balancing test allows the government a degree of control over its employees

15

to permit it to provide services to the public efficiently and effectively." <u>Melzer v. Board of</u> <u>Education of City School Dist. of City of New York</u>, 336 F.3d 185, 192-93 (2d Cir. 2003).  This balancing inquiry is generally a question of law. <u>Johnson v. Ganim</u>, 342 F.3d 105, 114 (2d Cir. 2003).

Here, the District's effective operation of its services justifies its discipline and reassignment of Plaintiffs and its prohibition of their desired speech.  Plaintiffs concede that they were aware of the alleged commission of at least nine separate types of inappropriate behavior. Plaintiffs also allege revealing that one colleague allegedly submitted fraudulent school records.

Certainly the District would have grounds to suspend employees who failed to report activity of a criminal or otherwise unprofessional nature continuing over a period of time. In that regard, the Plaintiffs' failure to report earlier forms the basis for the District's overriding interest in prohibiting the Plaintiffs from interacting with the children who were allegedly abused under their watch, or the children's parents.  Similarly, the District is obligated to try to prevent anyone else involved with the investigation from being placed at risk.

Insofar as plaintiffs claim they were denied the "right to publicly and non-disruptively express their concerns ..." (Am. Compl. ¶ 11), the pleading does not suggest what public purpose would be served by these individuals telling the public what they were instructed to tell the District Attorney.  It would not further the investigation and would probably inhibit it. This claim is really a red herring as the only reason Plaintiffs would wish to talk to the public would be to pursue their personal interest of distancing themselves from any claim of wrongdoing.  Plaintiffs acknowledge that the District was concerned that Plaintiffs would also communicate their concerns "to the parents of their autistic students and/or the media."  (Am.

Compl. ¶ 10). It is axiomatic that permitting Plaintiffs to discuss the matter with the students or parents would likely have a serious impact on the criminal investigation. The District has an interest in ensuring that the alleged victims' testimony is not influenced and that the alleged perpetrators do not gain an advantage in creating a defense. In fact, a government employer's prohibition of its employees from speaking on a matter which is currently undergoing a criminal or internal investigation is customary. See e.g. Babb v. Chertoff, 2006 WL 1371679, *5 (D.D.C. 2006); Patches v. City of Phoenix, 68 Fed.Appx. 772, 775 (9th Cir. 2003); Shelton Police Union, Inc. v. Voccola, 125 F.Supp.2d 604, 624-25 (D.Conn. 2001).

        Altogether, it is clear from the face of the Amended Complaint itself that these interests form the basis for sustaining the District's burden of showing "likely interference" with the functioning of the workplace. See Heil v. Santoro, 147 F.3d 103, 108 (2d Cir.1998). Certainly these are also interests which outweigh Plaintiffs' desire to repeat what they have already reported, thereby warranting the District directive. See id. (defendants' investigation and filing of charges against plaintiff did not constitute retaliation for his speaking out on matters of public concern where defendants were concerned about how he obtained a confidential village memorandum that he had attached to an unfair labor practice charge filed with a state agency); see also Marinoff, supra at 689 (no First Amendment violation because the potential for harm to students and liability on the part of City College because of employee's "philosophical counseling activities" outweighed the value of the speech at issue); Costello v. McEnery, 767 F.Supp. 72, 75 (S.D.N.Y. 1991) (plaintiff not entitled to a preliminary injunction reinstating him to his former position for infringement of his First Amendment rights where, after voicing numerous criticisms over a two-year period of what he claimed to be unethical or illegal PVB policies and operating methods, and then, during an acceptance speech for an award he won, he

17

reiterating some of his prior criticisms of PVB policies and practices, employer explained that plaintiff was reassigned not because of retaliation but because he could no longer work constructively with management). Thus, as a matter of law Defendants removed Plaintiffs based on the likely disruption to the sound administration of the public school system and not in retaliation for the speech, see Jeffries v. Harleston, 52 F.3d 9, 13 (2d Cir.1995), and the first cause of action should be dismissed in its entirety.

## POINT II

### THE AMENDED COMPLAINT DOES NOT PROPERLY STATE A CLAIM FOR VIOLATION OF THE EQUAL PROTECTION CLAUSE

In their second cause of action, Plaintiffs attempt to articulate a selective enforcement claim contending that Defendants violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because "Plaintiffs' identically situated co-workers, who had actual knowledge of the at-issue criminal wrongdoing but did not report it, were not subjected to forced administrative reassignment, were not subjected to a gag order, were not threatened with an investigation concerning their employment, were not denied summer employment and *inter alia* were not subjected to job reassignments with diminution of job duties/responsibilities ..." (Am. Compl. ¶ 23)  Plaintiffs' second cause of action does not state a *prima facie* case of an equal protection violation.

First, to proceed with a equal protection claim, Plaintiffs must state that (i) they are a member of a protected.class, (ii) that they were discriminated against because of their membership in that class; and (iii)  and deprived of a constitutional right.   Here, assuming the

18

which Plaintiffs portend to belong is the group which speaks out on matters of public concern, Plaintiffs cannot succeed on their equal protection claim if they are not entitled to the protections of the First Amendment. If the Court agrees that Plaintiffs have failed to state a claim for violation of their First Amendment rights, their equal protection claim must fail as well.

Even if the Amended Complaint passed judicial muster, Plaintiffs have not pleaded a viable claim equal protection claim in any event. Plaintiffs allege that they were subjected to "selective enforcement." To succeed on a "selective enforcement claim, Plaintiffs must demonstrate: (1) that they were treated differently from "other similarly situated" individuals, and (2) that such differential treatment was based on impermissible considerations such as the intent to inhibit or punish the exercise of constitutional rights. Harlen Assoc. v. Incorporated Vil. of Mineola, 273 F.3d 494, 499 (2d Cir.2001). Plaintiffs must present evidence comparing themselves to individuals that are "similarly situated in all material respects." Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir.2000) (internal citations omitted). In order to satisfy the "all material respects" standard, "a plaintiff must show that his co-employees 'were subject to the same ... evaluation and discipline standards' and that those similarly situated coworkers engaged 'in similar conduct.'" Sebold v. City of Middletown, 2007 WL 2782527 * 26 (D.Conn. Sep 21, 2007) *quoting* Graham, 230 F3d at 40.

Here, Plaintiffs offer no basis to conclude that they were similarly situated with any other employees of the Mahopac School District. Not one other employee is identified and of course no facts are pleaded to support the conclusory "identically situated" label offered by Plaintiffs in an attempt to morph this employment dispute subject to state law into a federal constitutional case.

19

Further, the protection afforded by the equal protection clause is not absolute. "Mere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir.1980). Instead, "selective prosecution implies that a selection has taken place." United States v. Armstrong, 517 U.S. 456, 469, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) (internal quotations and alterations omitted).

Here, the Amended Complaint makes passing statements that Defendants failed to take similar action against similarly situated members of the District staff who had actual knowledge of the alleged criminal wrongdoing but who failed to report it. (Am. Compl. ¶ 12) Yet, the Amended Complaint lacks the crucial allegation that Defendants knew of other staff members who similarly observed the alleged criminal wrongdoing for a similar duration and to a similar extent but who declined to report it. The District cannot be faulted for failing to take action against similarly situated employees of which it was unaware. Accordingly, Plaintiffs have not properly alleged that they were treated selectively in violation of the Equal Protection Clause, and their second cause of action should be dismissed.

## POINT III

## THIS ACTION SHOULD BE DISMISSED
## WITH RESPECT TO THE INDIVIDUAL DEFENDANTS

A.    The Amended Complaint Fails to Plead Any Allegation of
      Personal Involvement of Defendants Reidy and Dealleaume

This case should be dismissed with respect to all of the individual defendants. Of particular significance, however, is the fact that the Amended Complaint lacks any allegation that

20

Mr. Reidy and Ms. Dealleaume had any personal involvement in the alleged deprivation of Plaintiffs' constitutional rights. On this ground alone the Amended Complaint should be dismissed as against those two individuals.

To be sure, it is well-established that "[i]n order to succeed on a claim under Section 1983, a plaintiff must establish personal involvement in the alleged constitutional deprivation by each defendant." Yant v. Scholack, 1998 WL 157053, *7 (S.D.N.Y. 1998); see also Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). A supervisory official cannot be held liable under Section 1983 on a theory of respondeat superior. Gan v. City of New York, 996 F.2d 522, 536 (2d Cir. 1993) (citing Monell v. Department of Soc. Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)). Nor may he be held liable merely because he occupies a high position in the chain of command. Colon, 58 F.3d at 874. The personal involvement of a supervisory defendant may be shown only by evidence that

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [individuals] by failing to act on information indicating that unconstitutional acts were occurring.

Id. at 873; see also Tierney v. City of New York, 2007 WL 895133, *20 (S.D.N.Y. 2007). Further, "[b]road, conclusory allegations that a high-ranking defendant was informed of an incident are insufficient to impose liability." Gibson v. Commissioner of Mental Health, 2006

WL 1234971, *5 (S.D.N.Y. 2006); see also Grassel v. Board of Educ. of City of New York, 301 A.D.2d 498, 499, 753 N.Y.S.2d 138 (2d Dep't. 2003) ("Since the plaintiff failed to establish that former Board Chancellor Rudolph Crew was involved in the plaintiff's suspension, the plaintiff's 42 USC § 1983 claim against Crew was properly dismissed.")

Nowhere in the Amended Complaint do plaintiffs allege that defendants Reidy and Dealleaume personally participated in the alleged wrongful acts, failed to remedy a wrong after discovering it, created a policy or custom under which unconstitutional practices occurred, were grossly negligent in managing subordinates, or exhibited deliberate indifference by failing to act on information indicating that unconstitutional practices were occurring. Plaintiffs' closest reference to Reidy and Dealleaume is in Paragraph 10, where they state that "Quartararo, acting on behalf of himself and his co-defendants on that date issued to each Plaintiff a letter advising" of their suspension with pay. This statement do not even allege Reidy and Dealleaume knew of the alleged constitutional violation much less contain the specificity of personal involvement necessary to claim an award of damages against them under § 1983 or the Equal Protection Clause. See e.g. Shomo v. City of New York, 2005 WL 756834, *7 (S.D.N.Y. 2005) (insufficient allegation of personal involvement where plaintiff alleged that although Fraser and Perry were aware of the violations they did nothing to protect him, but did not adequately state that Fraser and Perry were aware of the violations he alleged, did not indicate when he complained to their offices, or what the content of the complaint was, did not explain how Fraser and Perry were responsible, directly or indirectly, for the acts of the other named defendants, or the prevailing conditions that contributed to the plaintiff's injuries); cf. Gibson, supra at *7 (claim that individual defendant "[a]s unit chief failed intervene to stop the amount of abuse against patients by staff treatment assistants or punish the wrong doers [sic]" sufficed as allegation of personal

22

involvement); <u>Jean-Laurent v. Wilkerson</u>, 438 F.Supp.2d 318, 326 (S.D.N.Y. 2006) (allegation that Horn "expressly authorized ... [corrections officers] to maintain a custom practice that authorized the use of physical force against inmates without just cause" fell into the third <u>Colon</u> category and thus properly stated a claim that Horn was personally involved in violating plaintiff's constitutional rights).

Accordingly, the Amended Complaint as it relates to Reidy and Dealleaume should be dismissed.

B.     All of the Individual Defendants are Protected
       <u>by the Doctrine of Qualified Immunity</u>

In addition, all of the individual defendants are protected by the doctrine of qualified immunity. The issue of the individual Defendants' qualified immunity may be decided as a matter of law without any discovery. Indeed, "the court should decide [the issue of qualified immunity] at the earliest possible stage of the litigation." <u>Liu v. New York City Police Dep't</u>, 216 A.D.2d 67, 627 N.Y.S.2d 683, 685-86 (1st Dep't), <u>lv</u> <u>denied</u>, 87 N.Y.2d 802 (1995), <u>cert.</u> <u>denied</u>, 517 U.S. 1167 (1996); <u>see also</u> <u>Hunter v. Bryant</u>, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). This principle is consistent with the rationale that "qualified immunity is an immunity from suit rather than a mere defense to liability." <u>Dasher v. Hughes</u>, 2000 WL 726865, *7 (S.D.N.Y. 2000).

The only occasion where qualified immunity will not shield performance is when the alleged act either (a) was in violation of clearly established law, or (b) was plainly incompetent." <u>Castro v. U.S.</u>, 34 F.3d 106, 112 (2d Cir. 1994); <u>see</u> <u>also</u> <u>Hunter v. Bryant</u>, 502 U.S. at 227, 112 S.Ct. at 537 ("The qualified immunity standard 'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the

law.'"), quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271

(1986); see also Grassel v. Board of Educ. of City of New York, 301 A.D.2d 498, 499, 753

N.Y.S.2d 138 (2d Dep't. 2003) (the actions of a superintendent are entitled to qualified

immunity").

      Here, the allegation that Quartararo, in his capacity as the District's Assistant

Superintendent, even if on behalf of the other individual Defendants, issued the suspension letter

to four of the District's employees hardly requires a factual resolution as to whether immunity is

available.  Prohibiting Plaintiffs from speaking on this matter during their suspension "did not

violate 'clearly established' rights of which a reasonable person would have known" which

would give rise to a First Amendment claim. See Soares v. Connecticut, 8 F.3d 917, 920 (2d

Cir.1993).  As demonstrated above, the federally protected right Defendants are accused of

violating was not clearly established at the time of the alleged violation, as Plaintiffs did not

possess the right to speak on any employment-related matter of their choice, much less one of

personal interest.  Even if Plaintiffs did possess such a right, however, as set forth above, it can

easily be said that no reasonable trier of fact could find that Quartararo's belief that he was not

violating Plaintiffs' constitutional rights was unreasonable. See e.g. Segal v. Crotty, 352

F.Supp.2d 424, 428 (S.D.N.Y. 2005) (because Bello had probable cause to arrest plaintiff, there

was no Federal constitutional violation, and therefore no reasonable trier of fact could conclude

otherwise.).

      Nor could there be an issue of Quartararo's competence.  Obviously a competent

Assistant Superintendent – or Superintendent of Schools or Principal for that matter –would

discipline and transfer the District's employees where it appears that they acted unprofessionally

in failing to report sooner alleged egregious activities which were directed toward students. As indicated above, a government employer's prohibition of its employees from speaking on a matter which is currently undergoing a criminal or internal investigation is customary. See e.g. Babb v. Chertoff, 2006 WL 1371679, *5 (D.D.C. 2006); Patches v. City of Phoenix, 68 Fed.Appx. 772, 775 (9th Cir. 2003); Shelton Police Union, Inc. v. Voccola, 125 F.Supp.2d 604, 624-25 (D.Conn. 2001).

Accordingly, qualified immunity should be found as a matter of law, and, at a minimum, the lawsuit should be dismissed as against Mr. Quartararo, Mr. Reidy and Ms. Dealleaume. See Genas v. State of N.Y. Dept. of Correctional Services, 75 F.3d 82, 830 (2d Cir. 1996).

CONCLUSION

In view of the foregoing, it is respectfully requested that this Court dismiss the Amended Complaint in its entirety, and award such other and further relief as it may deem just and proper.

Dated: New York, New York
        November 5, 2007

                                Respectfully submitted,

                                SNITOW KANFER HOLTZER
                                  & MILLUS, LLP

        By:     _____
                Paul F. Millus, Esq. (PM-8240)
                575 Lexington Avenue, 14th Floor
                New York, New York 10022
                (212) 317-8500
                *Attorneys for Defendants Vincent Quartararo,*
                *Robert J. Reidy, Jr., Carol Dealleaume and*
                *Mahopac Central School District*