UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOANNE SASSONE, MELANIE PARTELOW
NANNA, KRISTY NICKERSON, and MARY BETH
SANGALLI,

                        Plaintiffs,

        -v-


VINCENT QUARTARARO, individually, ROBERT
J. REIDY, JR., individually, CAROL
DeALLEAUME, individually, and MAHOPAC
CENTRAL SCHOOL DISTRICT,

                        Defendants.

Case No. 07-CV-4142 (KMK)

OPINION AND ORDER

Appearances:

Jonathan Lovett, Esq.
Kim P. Berg, Esq.
Lovett & Gould
White Plains, NY
*Counsel for Plaintiffs*

Paul F. Millus, Esq.
Virginia K. Trunkes, Esq.
Snitow Kanfer Holtzer & Millus LLP
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Plaintiffs Joanne Sassone, Melanie Partelow Nanna, Kristy Nickerson, and Mary Beth

Sangalli ("Plaintiffs"), who are employees of Defendant Mahopac Central School District (the

"District"), brought this action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging that the

District and three of its administrators ("Defendants") violated Plaintiffs' rights under the First

Amendment and Equal Protection Clause in connection with actions taken by Defendants following Plaintiffs' reporting of alleged co-worker misconduct.  Defendants move to dismiss Plaintiffs' First Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).[1]  For the reasons stated herein, Defendants' motion is granted in part and denied in part.

## I.  Background

For the purpose of this Motion, the Court accepts as true all facts alleged by Plaintiff in his First Amended Complaint ("Amended Complaint"), filed September 27, 2007.

As of the date of filing of the Amended Complaint, Plaintiffs were employed by the District, each in the position of "Teacher's Aide."  (Am. Compl. ("AC") ¶ 3.)  Prior to April 2007, Plaintiffs worked with autistic children in the "prestigious 'Bridge Program'" at Mahopac Falls Elementary School.  (*Id.* ¶¶ 3, 10.)

Defendants Robert J. Reidy, Jr. ("Reidy"), Vincent Quartararo ("Quartararo"), and Carol DeAlleaume ("DeAlleaume") (collectively, the "Individual Defendants") were employed by the District as Superintendent, Assistant Superintendent, and Active Interim Principal, respectively, "at all times relevant to [Plaintiffs'] complaint."  (*Id.* ¶¶ 4-6.)

In or about March 2007, Plaintiffs "expressed concerns to the Defendants regarding classroom conduct engaged in" by five of Plaintiffs' coworkers.  (*Id.* ¶ 8.)  Plaintiffs "related . . . their personal observations" of, *inter alia*, a teacher and two teacher's aides using "degrading nicknames for the autistic children," a teacher's aide "grabbing [another teacher's aide's] breasts

---

[1] The individually named defendants moved to dismiss the claims as to themselves on several grounds.  Plaintiffs subsequently agreed to voluntarily dismiss these defendants from the action without prejudice, pursuant to Fed. R. Civ. P. 41(a).  (Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 20.)  Therefore, these defendants are dismissed, and the official caption should be changed accordingly.

in front of their students," a teacher's aide "slapping [a teacher's] buttocks and massaging her in front of their students," a speech therapist "exposing her breasts" and "exposing her nipples" to the students, and two teacher's aides "engaging in sex-related discussions in front of their students."  (*Id.* ¶ 8(a)-(b), (d)-(f), (h).)  Defendants subsequently "ordered [Plaintiffs] to reiterate their complaints to the [local] Police."  (*Id.* ¶ 9.)  Plaintiffs' reports to the police resulted in "a criminal investigation in the Spring of 2007," after which four of the five coworkers were "arrested and charged with various crimes."  (*Id.*)

On April 6, 2007, Quartararo, allegedly on behalf of all Defendants, sent each Plaintiff a letter (the "April 6 Letter") stating as follows:

> You are hereby placed on administrative reassignment to home, effective April 10, 2007, with full pay and benefits, pending the District's investigation into certain issues which have recently come to our attention in connection with your employment.
>
> You are not allowed on school grounds or at school sponsored events until further notice.  You are also not allowed to have any contact with students or their parents until further notice.

(*Id.* ¶ 10 (internal quotation marks omitted).)  Plaintiffs thereafter "did not communicate with any of their autistic students regarding their concerns about the maltreatment to which they were subjected; did not communicate with the parents/guardians of any of those students in order to apprise them of the despicable treatment accorded their children; and did not communicate with the media regarding the outrageous treatment accorded those students."  (*Id.* ¶ 13.)

On May 29, 2007, Plaintiffs filed their initial Complaint in this action, alleging that they did not communicate with students, parents, or the media about the alleged misconduct because they "recogniz[ed] the implicit threat of disciplinary action and/or job termination should they violate [the April 6, 2007] order."  (Compl. ¶ 11.)  They alleged that their "banishment from the

school and coerced silence, coupled with the arrests of their former co-workers, w[ere] intended by Defendants to give the false public impression that Plaintiffs had engaged in misconduct and/or criminal wrongdoing of the same or a similar nature to" that engaged in by their five coworkers. (*Id.* ¶ 12.) Plaintiffs alleged that "Defendants' conduct and retaliatory conduct" violated their First Amendment rights, and caused them to suffer various injuries, including "deprivation of their right to express as citizens their opinions on matters of grave public concern." (*Id.* ¶¶ 13, 15.)

On or about June 19, 2007, Defendants' counsel "notified Plaintiffs' union representative that . . . Nanna, Nickerson, and S[a]ngal[l]i would not be permitted to work for the District during the summer," although they had done so in previous years, for additional compensation. (AC ¶ 15.) "On or about August 27, 2007, Defendants in writing directed each of the Plaintiffs to report two days thereafter to the . . . school library . . . [in order] to discuss their 'employment' with the District." (*Id.* ¶ 16.) On August 29, 2007, each Plaintiff was interviewed separately, and each was "asked a series of 'yes' [or] 'no' questions regarding their original report" as to the misconduct of their five coworkers. (*Id.* ¶ 17.) Subsequently, Defendants informed Plaintiffs of their work assignments for the 2007-08 school year. (*Id.* ¶ 18.) Each Plaintiff was "assigned to a new work location," "directed to assume degrading and grossly diminished job responsibilities," and excluded from the "Bridge Program." (*Id.*)

Plaintiffs filed their Amended Complaint on September 27, 2007, alleging that Defendants imposed on Plaintiffs the conditions stated in the April 6 Letter "[o]ut of concern that Plaintiffs would . . . communicate their observations to the parents of their autistic students and/or the media" (*id.* ¶ 10), that Defendants' representation in the letter of a current or future

4

"District investigation . . . with respect to Plaintiff's employment" was "false" and "intended to intimidate Plaintiffs" and prevent them from "publicly . . . express[ing] their concerns about the systemic criminal wrong doing and the injuries/humiliation suffered by the autistic children" (*id.* ¶ 11), that the conditions stated in the April 6 Letter and "the threat . . . [of] investigation by the District and potential[] . . . job termination" caused Plaintiffs to refrain from communicating with their students, their students' parents, or the media (*id.* ¶ 13), and that Defendants excluded Nanna, Nickerson, and Sangalli from working for the District over the summer and gave all Plaintiffs inferior and "stigmatiz[ing]" work assignments for the 2007-08 school year in retaliation for Plaintiffs' statements about their coworkers' "criminal wrong doing" and for "their filing of this action" (*id.* ¶¶ 15, 18). Plaintiffs allege that their "identically situated co-workers, who had actual knowledge of the . . . criminal wrong doing but did not report it, were not subjected" to the actions taken by Defendants with respect to Plaintiffs. (*Id.* ¶ 23.) Plaintiffs further allege that they suffered various injuries "[a]s a proximate result of Defendants' intentional retaliatory conduct." (*Id.* ¶ 19.)

Plaintiffs assert two claims against Defendants pursuant to Section 1983. First, Plaintiffs claim that Defendants' "conduct and retaliatory conduct" violated Plaintiffs' First Amendment rights. (*Id.* ¶ 21.) Second, Plaintiffs claim that "Defendants intentionally subjected Plaintiffs" to "disparate treatment" as compared to "Plaintiffs' identically situated co-workers" in violation of the Equal Protection Clause of the Fourteenth Amendment. (*Id.* ¶ 23.)

Plaintiffs seek compensatory damages against all Defendants, punitive damages against the Individual Defendants, and an injunction against Defendants' imposition of the conditions stated in the April 6, 2007 Letter. (*Id.* ¶ 23(a)-(c).)

5

II.  Discussion

A.  Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).  "In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted) (second alteration in *Twombly*).  In *Bell Atlantic Corp. v. Twombly*, *see id.* at 1964-69, the Supreme Court abandoned reliance on the oft-cited line from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." As the Court explained in *Twombly*, a literal application of *Conley*'s "no set of facts" rationale is

6

improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S. Ct. at 1968 (alteration in *Twombly*). Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 1969.  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  If Plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful consideration of the Court's [*Twombly*] opinion . . . , we believe the Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*."  (emphasis in original)).

### B.  First Amendment Retaliation

"To establish a First Amendment retaliation claim, a plaintiff must show:  (1) his speech addressed a matter of public concern; (2) he suffered an adverse employment action; and (3) a causal connection between the speech and the adverse employment action." *Singh v. City of New York*, 524 F.3d 361, 372 (2d Cir. 2008).

### 1.  Speech on a Matter of Public Concern

Plaintiffs claim that Defendants retaliated against them for "express[ing] . . . concern" regarding criminal wrong doing" and for "filing . . . this action."  (AC ¶ 15.)  The Amended

Complaint indicates two instances in which Plaintiffs expressed their concerns about the misconduct of their coworkers: (1) "[i]n or about March of 2007," when Plaintiffs "expressed concerns to the Defendants" (*id.* ¶ 8), and (2) at some point afterwards, but not after "the Spring of 2007," when Plaintiffs "reiterate[d] their complaints to the [local] Police" upon Defendants' "order[s]" (*id.* ¶ 9).  Plaintiffs initially filed this Section 1983 action on May 29, 2007, alleging violations of their First Amendment rights.  (*Id.* ¶ 14.)

As the Second Circuit recently clarified, "[w]hether public employee speech is protected from retaliation under the First Amendment [depends on] . . . 'whether the employee spoke *as a citizen* on a matter of public concern.'"  *Ruotolo*, 514 F.3d at 188 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)) (emphasis added).  "[A] public employee speaking in his official capacity is not speaking as a citizen for First Amendment purposes . . . ."  *Id.* at 189; *see also Garcetti*, 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.").

The Amended Complaint adequately alleges that Plaintiffs spoke as citizens on a matter of public concern when they initially reported their coworkers' alleged misconduct to Defendants, but not when they subsequently reported the misconduct to the police.  Defendants concede that the content of Plaintiffs' report to Defendants was a matter of public concern (Defs.' Mem. of Law in Supp. of Mot. to Dismiss ("Defs.' Mem.") 12), and indeed, "[t]he conduct and character of teachers . . . at a public school . . . reasonably qualifies as a matter that concerns the community," *Fierro v. City of New York*, No. 07-CV-11214, 2008 WL 2937790, at *8 (S.D.N.Y. July 30, 2008).  Nor do Defendants deny that Plaintiffs spoke as citizens when they

8

expressed their concerns to Defendants. Because the Amended Complaint alleges that "none of the Plaintiffs had any job responsibility and/or duty to make the subject report(s)" (AC ¶ 3), because it is otherwise not clear from the face of the Amended Complaint whether Plaintiffs' statements were made in their official capacity as employees, and because the Court is required to draw all inferences in the light most favorable to Plaintiffs, the Court finds that Plaintiffs have adequately alleged that they spoke as citizens on a matter of public concern in reporting the conduct of their coworkers to Defendants. *See Fierro*, 2008 WL 2937790, at *7. By contrast, Plaintiffs' subsequent report to the police was speech pursuant to their official job duties, as the Amended Complaint states that Defendants "ordered" Plaintiffs to make such a report. *See Ventura v. Town of Manchester*, No. 06-CV-630, 2008 WL 4080099, at *16 (D. Conn. Sept. 2, 2008) ("The undisputed fact that [a supervisor] called Plaintiff into a meeting and ordered him to speak . . . indicates that Plaintiff's speech . . . was 'commissioned or created by his employer', and thus, not entitled to First Amendment protection under *Garcetti*."); *Weintraub v. Bd. of Educ. of City of New York*, 489 F. Supp. 2d 209, 215 (E.D.N.Y. 2007) (noting that "if a public employee is compelled by his official duties to make the statement in question, the *Garcetti* rule excludes that statement from First Amendment protection").

Plaintiffs also adequately allege that they spoke as citizens on a matter of public concern when they filed their initial Complaint in this action. The filing of a retaliation suit in which the plaintiff alleges acts of retaliation "bear[ing] upon the circumstances and perquisites of [her] employment, such as reassignment, transfer, time off, and discipline" and resulting in "adverse . . . effects that [she] suffered personally," and in which the "relief sought is also almost entirely personal to [her]," is not speech on a matter of public concern. *Ruotolo*, 514 F.3d at 190. This is

so even if the plaintiff "accuses [a defendant] of routinely tolerating the violation of whistleblower rights, and seeks punitive damages to deter 'future illegal and retaliatory conduct,' arguably hinting at some broader public purpose." *Id.*; *see also Kempkes v. Marvin*, No. 07-CV-11351, 2008 WL 5330673, at *8 (S.D.N.Y. Dec. 19, 2008) (holding that the filing of a retaliation complaint was not speech on a matter of public concern where "all of defendants' alleged retaliatory . . . acts . . . related to Plaintiff's employment[,] Plaintiff did not allege that anyone other than himself suffered the effects of defendants' acts[, and] Plaintiff neither sought non-monetary remedies nor alleged that he sought any relief in order to deter future adverse acts by defendants against others").  Here, the sole adverse act alleged in Plaintiffs' original Complaint — the issuance of the April 6 Letter, which put Plaintiffs on administrative reassignment and barred them from contact with students or parents — related to Plaintiffs' employment.  However, the relief sought by Plaintiffs in that Complaint included "a judgment . . . permanently enjoining Defendants' institution/maintenance of the [conditions set forth in the April 6 Letter]."  (Compl. ¶ 15(c).)  By seeking an injunction that would remove the barriers to Plaintiffs' speech as citizens on a matter of public concern, Plaintiff's original Complaint thus involved something more than "the airing of generally personal grievances," *Ruotolo*, 514 F.3d at 190.  Rather, Plaintiffs' original Complaint plausibly raised the possibility that prospective injunctive relief could directly benefit the larger public, *see Nixon v. Shrink Mo. Gov't PAC*, 528 U.S. 377, 403 (2000) (noting the "First Amendment interests of listeners"), and therefore the Court cannot say, as a matter of law, that the filing of that Complaint was not speech on a matter of public concern.  *Cf. Konits v. Valley Stream Cent. High Sch. Dist.*, 394 F.3d 121, 125-26 (2d Cir. 2005) (holding that the filing of a retaliation lawsuit could be speech on a matter of concern

where plaintiff had claimed retaliation for her "speech about gender discrimination against a fellow employee that directly implicated the access of the courts to truthful testimony").

### 2.  Adverse Employment Action

"[T]he proper legal test in determining whether an employment action is adverse in First Amendment retaliation cases is whether the alleged acts would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir. 2007) (internal quotation marks omitted).  Adverse employment actions obviously may include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand," as well as "lesser actions," such as "negative evaluation letters, express accusations of lying, assignment of lunchroom duty, reduction of class preparation periods, failure to process teacher's insurance forms, transfer from library to classroom teaching as an alleged demotion, and assignment to classroom on fifth floor which aggravated teacher's physical disabilities." *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006) (internal quotation marks omitted).

Plaintiffs adequately allege adverse employment action, insofar as they claim that they were "'placed on administrative reassignment to home, effective April 10, 2007'" (AC ¶ 10) — despite the absence of a District investigation into Plaintiff's behavior (*id.* ¶ 11) — that three of them were denied employment with the District over the summer (*id.* ¶ 15), and that they were all reassigned to less prestigious positions with diminished job responsibilities in the 2007-08 school year (*id.* ¶ 18).  *See Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 134 (2d Cir. 2008) (holding that a jury could have found that a transfer "resulted in . . . 'significantly diminished material responsibilities,' and therefore constituted an adverse employment action"); *Beyer v.*

11

*County of Nassau*, 524 F.3d 160, 165 (2d Cir. 2008) (noting that "an adverse employment action can exist when an employee's new assignment is 'materially less prestigious'"); *Baker v. Connecticut*, No. 03-CV-1894, 2006 WL 581205, at *8 (D. Conn. Mar. 8, 2006) (holding that "forced administrative leave . . . could constitute an adverse employment action because it involved 'significantly diminished material responsibilities' over a significant period of time"); *cf. Joseph v. Leavitt*, 465 F.3d 87, 91 (2d Cir. 2006) (holding that "administrative leave with pay *during the pendency of an investigation* does not, without more, constitute an adverse employment action" (emphasis added)).

### 3.  Causal Connection

"To establish causation, a plaintiff must show that the protected speech was a substantial motivating factor in the adverse employment action . . . ."  *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 167 (2d Cir. 2006) (internal quotation marks omitted); *see also Hoyt v. Andreucci*, 433 F.3d 320, 327 (2d Cir. 2006).  "A plaintiff may establish causation indirectly by showing his speech was closely followed in time by the adverse employment decision."  *Cioffi*, 444 F.3d at 168.  "No bright line . . . define[s] the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action."  *Id.* (internal quotation marks omitted) (alteration in original).

Plaintiffs allege that they reported their coworkers' misconduct to Defendants in approximately March 2007, and that Defendants placed Plaintiffs on administrative reassignment in April 2007, denied three Plaintiffs summer employment in June 2007, and reassigned Plaintiffs to inferior employment positions for the 2007-08 school year following meetings held

12

with District officials on August 29, 2007.  Thus, all of Defendants' allegedly retaliatory conduct occurred within approximately five to six months after Plaintiffs' initial speech, and some of the conduct may have occurred only days after the speech.  The Court cannot say, as a matter of law, that this temporal relationship is too attenuated to establish a plausible causal relationship.  *See Agostino v. Simpson*, No. 08-CV-5760, 2008 WL 4906140, at *7 (S.D.N.Y. Nov. 17, 2008) (denying motion to dismiss "[b]ecause there is no bright line for temporal proximity and because six months could at least be in the range of acceptable time periods"); *Lindner v. Int'l Business Machines Corp.*, No. 06-CV-4751, 2008 WL 2461934, at *7 (S.D.N.Y. June 18, 2008) (noting that "retaliation claims are rarely dismissed pursuant to Rule 12(b)(6) where the plaintiff has alleged a time period of less than one year between the protected activity and the alleged retaliatory conduct").

Defendants argue that Plaintiffs' allegation of temporal proximity fails to establish the requisite causation, because the Amended Complaint's allegations themselves disprove the inference that Plaintiffs' protected speech was a substantial motivating factor in the adverse employment actions taken by Defendants.  Defendants argue that the multitude of incidents of coworker misconduct alleged by Plaintiffs supports the "clear inference that these events did not all take place in a day but rather occurred over a period of time," and thus the resulting inference that Plaintiffs were aware of "extensive alleged wrongful behavior for a significant amount of time" and failed promptly to report the behavior.  (Defs.' Mem. 12-13.)  Therefore, Defendants argue, because Plaintiffs' supposed tardiness in reporting the misconduct would clearly justify the adverse employment actions taken by Defendants, it is not plausible that Plaintiffs' speech itself substantially motivated those actions.  (*Id.* 13-14.)  Though Defendants' argument is not

13

without force, the Amended Complaint does not require this conclusion, as it does not allege that each Plaintiff observed or was aware of all of the instances of misconduct or that all Plaintiffs waited to report the conduct at the same time.  Construing Plaintiffs' allegations in the light most favorable to them, and drawing all reasonable inferences in their favor, the Court finds that the alternative inferences drawn by Defendants do not make Plaintiffs' allegations of causation implausible.

4.  Adequate Justification for Defendants' Actions

Defendants contend that even if Plaintiffs successfully allege speech on a matter of public concern, adverse employment action, and a causal relationship between the two, they still cannot state a claim for retaliation because Defendants' actions were justified.  (Defs.' Mem. 14-18.)

"The possibility of a First Amendment claim arises" if "the employee spoke as a citizen on a matter of public concern," but this is only the first step of the inquiry as to whether the employee has a "First Amendment cause of action based on his or her employer's reaction to the speech."  *Garcetti*, 547 U.S. at 418.  Then, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public.  This consideration reflects the importance of the relationship between the speaker's expressions and employment.  A government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."  *Id.* (internal citation omitted).

"If it is determined that the employee's expressive conduct as a citizen involved a matter of public concern, the government bears the burden of justifying its adverse employment action.

14

Justifications may include such considerations as maintaining efficiency, discipline, and integrity, preventing disruption of operations, and avoiding having the judgment and professionalism of the agency brought into serious disrepute." *Piscottano v. Murphy*, 511 F.3d 247, 271 (2d Cir. 2007) (internal citation omitted). "[A] court must balance the employee's interest in expressing herself against any injury the speech could cause to the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Locurto v. Giuliani*, 447 F.3d 159, 172 (2d Cir. 2006) (internal quotation marks omitted).

Defendants here concede that it is "the District's burden of showing 'likely interference' with the functioning of the workplace." (Defs.' Mem. 17.)  The Court does not see how the District could make such a showing, considering that the Court is limited to consideration of the Amended Complaint.  The only allegations as to the potentially disruptive nature of Plaintiffs' speech are that Plaintiffs' speech was "non-disruptive[]" (AC ¶ 8) and that "[a]t no time did Plaintiffs' conduct and/or speech . . . in any way impair and/or potentially impair the effective and/or efficient operation of the District" (*id.* ¶ 12).  In any event, Defendants, who deny that they took adverse action against Plaintiffs on account of their report of misconduct — suggesting instead that they did so because they believed Plaintiffs had *delayed* making such a report (Defs.' Mem. 12-14) — do not themselves argue that Plaintiffs' reports were disruptive.

Accordingly, Plaintiffs have stated a claim that Defendants retaliated against them for reporting their coworkers' misconduct to Defendants and for filing their original Complaint, and the District's motion to dismiss that claim is denied.

15

C.  Chilling of Protected Speech

Plaintiffs, in addition to claiming retaliation, allege that Defendants "silenced" Plaintiffs, and that Defendants' actions caused Plaintiffs to refrain from communicating with their students, their students' parents, or the media (AC ¶ 13), thereby "chill[ing]" Plaintiffs' "exercise of their First Amendment protected rights" (*id.* ¶ 19).

"To state a claim under Section 1983, a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his or her constitutional rights — in other words, there is an injury requirement to state the claim. . . . [P]laintiffs who allege a violation of their right to free speech must prove that official conduct actually deprived them of that right.  To prove this deprivation, [a plaintiff] must come forward with evidence showing either that (1) defendants silenced him or (2) defendant[s'] actions had some actual, non-speculative chilling effect on his speech."  *Williams v. Town of Greenburgh*, 535 F.3d 71, 78 (2d Cir. 2008) (internal citations and quotation marks omitted) (third alteration in original).  "[A] governmental employer may impose certain restraints on the speech of its employees, restraints that would be unconstitutional if applied to the general public.  [However, t]he [Supreme] Court has recognized the right of employees to speak on matters of public concern . . . ."  *City of San Diego v. Roe*, 543 U.S. 77, 80 (2004).  In essence, a public employee claiming that her employer *prospectively* chilled her First Amendment rights — rather than retaliated against her for past speech — must show the basic elements of a retaliation claim, except that instead of showing an adverse employment action, the plaintiff must demonstrate that her speech was actually chilled.

For the reasons stated above, *see supra* Section II.B.1, Plaintiffs sufficiently allege that their chilled speech — discussing alleged misconduct by Plaintiffs' coworkers with students,

16

parents, and the media — would have been speech by citizens on a matter of public concern.  In addition, Plaintiffs properly allege causation, as they claim that Defendants directly instructed Plaintiffs that they were "'not allowed to have any contact with students or their parents until further notice'" (AC ¶ 10) and that this instruction caused them to refrain from "communicat[ing] with the media" (*id.* ¶ 13).

Defendants contend that Plaintiffs' desired speech to students, parents, and the media would have been speech about "matters of purely personal interest which did not constitute a matter of public concern." (Defs.' Mem. 9.)  But, if speech about misconduct by Plaintiffs' coworkers was properly alleged to have been on a matter of public concern when directed to Defendants, as discussed above, it likewise could have been on a matter of public concern if directed to others.  Nor can the Court sustain Defendants' alternative contention that Plaintiffs merely wanted to speak to the public in order to "pursue their personal interest of distancing themselves from any claim of wrongdoing" (*id.* 16); the Court must accept the allegations in the Amended Complaint in the light most favorable to Plaintiffs, and those allegations do not compel the inference that Plaintiffs' motives in desiring to speak were purely selfish.

Defendants' remaining arguments essentially assert that even if Defendants prevented Plaintiffs from speaking as citizens on a matter of public concern, they had adequate justification for doing so, *see supra* Section II.B.4.  First, Defendants argue, it is reasonable for a government agency to refuse to allow its employees "to engage in counseling or [some] other form of heart-to-heart discussion with the government agency's clients." (Defs.' Mem. 10.)  Second, the government may deny public employees the "unfettered right to continue reporting a matter after

having already . . . reported it." (*Id.*)[2] Third, "Plaintiffs' failure to report earlier" supports "the District's overriding interest in prohibiting the Plaintiffs from interacting with the children who were allegedly abused under their watch, or the children's parents." (*Id.* 16.) Fourth, "permitting Plaintiffs to discuss the matter with the students or parents would likely have a serious impact on the criminal investigation," and "a government employer's prohibition of its employees from speaking on a matter which is currently undergoing a criminal or internal investigation is customary." (*Id.* 17.)

Defendants' arguments might prevail on a motion for summary judgment, as Defendants have cited several cases rejecting Section 1983 free speech claims under circumstances suggesting a significant employer interest in restricting employee speech (Defs.' Mem. 17-18 (citing *Heil v. Santoro*, 147 F.3d 103, 109-11 (2d Cir. 1998) (affirming summary judgment for defendants); *Jeffries v. Harleston*, 52 F.3d 9, 13-15 (2d Cir. 1995) (reversing post-trial judgment for plaintiff and remanding with instructions to enter judgment for defendants); *Marinoff v. City Coll. of N.Y.*, 357 F. Supp. 2d 672, 690 (S.D.N.Y. 2005) (awarding summary judgment to defendants); *Costello v. McEnery*, 767 F. Supp. 72, 75 (S.D.N.Y. 1991) (denying plaintiff's motion for preliminary injunction))), but none of these cases supports dismissal on a Rule 12(b)(6) motion. For instance, in *Marinoff*, the district court awarded summary judgment to the defendant college on the plaintiff professor's claim that a moratorium on plaintiff's research violated his First Amendment rights, weighing the parties' asserted interests as developed during

---

[2] Defendants frame these first two arguments as contesting whether such speech could *ever* be protected, rather than contending that government interests justified restricting it, but the arguments implicitly rely on the reasonableness of government employer regulations of employee speech and do not address the issue of whether the speech could be characterized as addressing a matter of public concern.

discovery and concluding that defendant's interests prevailed.  *See* 357 F. Supp. 2d at 687-90.

Cases presenting the circumstances here — involving Rule 12(b)(6) motions to dismiss public employees' claims of prospective chilling of their First Amendment rights — are rare. Most closely on point within the Second Circuit appears to be *Walsh v. City of Auburn*, 942 F. Supp. 788 (N.D.N.Y. 1996), in which a former city employee plaintiff alleged that his First Amendment rights were violated by his employer's "memorandum which forbade solid waste facility employees from talking with [plaintiff] while he was on-site and implied that employees should not talk with [him] about departmental business while off-site," *id.* at 797-98.  Then-District Judge Pooler, after noting that "the recipient of speech has standing to protest a gag order under certain circumstances," *id.* at 798, laid out the balancing test applicable to public employee free speech claims, and concluded that dismissal was inappropriate:

> The court must examine the entire record for the content, form and context of a given statement to determine whether it touches on a matter of public concern.  If speech is of public concern, the court must next balance the employee's interest in making the statement against the state's interest in promoting the efficiency of the work its employees perform for the public.
>
> Some of the forbidden topics addressed in the memo — e.g. the departmental operations and personnel deployment — arguably touch on matters of public concern.  *Defendants have submitted no proof to support their claim that [defendant's] interests as an employer outweigh [plaintiff's] interests in receiving speech from public employees.  Instead, this motion seeks dismissal under Rule 12(b)(6) for failure to state a claim on which relief can be granted* so the governing standard is whether it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Id.* at 799 (internal citations and quotation marks omitted) (emphasis added).  Although the "no set of facts" standard for Rule 12(b)(6) motions no longer applies, *see Twombly*, 127 S. Ct. at 1964-69, the court's reasoning in *Walsh* applies to the instant case.  On a motion to dismiss, where only the plaintiff's allegations are before the Court, it is difficult to see how a defendant

19

could meet its burden to produce evidence that its interests in restricting employee speech outweigh a plaintiff's alleged First Amendment interests, unless the complaint itself substantiated the defendant's claims.  *Cf. McGrath v. Nassau Health Care Corp.*, 217 F. Supp. 2d 319, 329 (E.D.N.Y. 2002) (denying Rule 12(b)(6) motion to dismiss without mentioning the balancing of defendants' and plaintiff's interests).  In this case, Plaintiffs have not pled facts establishing that Defendants' interests outweigh Plaintiffs' First Amendment interest in speaking on the matters at issue.  In fact, Plaintiffs have specifically pled that their speech did not "impair and/or potentially impair the effective and/or efficient operation of the District" (AC ¶ 12), and that Defendants had no reason to believe that Plaintiffs' future speech to students, parents, or the media would "in any way interfere" with any investigation of the alleged misconduct (*id.* ¶ 12(b)).

Accordingly, Plaintiffs have stated a claim that Defendants impermissibly chilled their speech by directing them not to have any contact with students and parents, and Defendants' motion to dismiss that claim must be denied.

D.  Equal Protection

Plaintiffs claim that "Defendants intentionally subjected Plaintiffs" to "disparate treatment" in violation of the Equal Protection Clause of the Fourteenth Amendment, on a theory that "Plaintiffs' identically situated co-workers, who had actual knowledge of the at-issue criminal wrong doing but did not report it, were not subjected to forced administrative reassignment, were not subjected to a gag order, were not threatened with an investigation concerning their employment, were not denied summer employment and *inter alia* were not subjected to job reassignments with diminution of job duties/responsibilities."  (AC ¶ 23.)

20

"The Equal Protection Clause of the Fourteenth Amendment directs that all persons similarly situated . . . be treated alike.  In order to establish a violation of equal protection based on selective enforcement, the plaintiff must ordinarily show (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person."  *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999) (internal citations and quotation marks omitted); *see also Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) ("To prove a violation of the Equal Protection Clause, . . . a plaintiff must demonstrate that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination.").

The Amended Complaint contains only one allegation arguably relevant to Plaintiffs' equal protection claim:  "At no time did Defendants . . . have any factual basis to in good faith believe that Plaintiffs[] . . . [h]ad themselves engaged in any wrong doing by not earlier reporting the crimes committed by their co-workers — a circumstance confirmed by the Defendants' failure to take any remedial and/or investigative and/or punitive and/or disciplinary action against identically situated (to Plaintiffs) members of the District staff who had actual knowledge of the criminal wrong doing and at no time reported it to Defendants or any of them." (AC ¶ 12(d).)

This allegation is sufficient to state a claim of selective enforcement in violation of the Equal Protection Clause.  *See, e.g.*, *Bissinger v. City of New York*, No. 06-CV-2325, 2007 WL 2826756, at *9 (S.D.N.Y. Sept. 24, 2007) ("Plaintiffs claim that . . . they were arrested, ticketed, and harassed when legally selling photographs, while other vendors, selling at the same times

and places, were not.  They further claim that Defendants targeted photograph vendors with intent to inhibit the selling of photographs on the street, which is protected First Amendment activity.  These averments are sufficient to state an equal protection claim." (internal citation omitted)); *Henneberger v. County of Nassau*, 465 F. Supp. 2d 176, 195-96 (E.D.N.Y. 2006) (denying motion to dismiss selective enforcement claim where "plaintiffs allege that defendants lacked a 'sufficiently compelling state interest to justify [the] disparity in treatment of similarly situated individuals'" (alteration in *Henneberger*)).[3]  Accordingly, the District's motion to dismiss Plaintiffs' equal protection claim is denied.

### E.  Personal Involvement and Qualified Immunity of Individual Defendants

Defendants contend that Reidy and DeAlleaume should be dismissed from the action on grounds that Plaintiffs fail to allege that Reidy and DeAlleaume were personally involved in the alleged violations of Plaintiffs' constitutional rights.  (Defs.' Mem. 20-23.)  Defendants further argue that all three Individual Defendants are entitled to qualified immunity from suit.  (*Id.* 23-25.)  Plaintiffs have dropped their claims against the Individual Defendants, pursuant to Fed. R. Civ. P. 41(a), without prejudice.  Thus, the Court need not consider these arguments.

### III.  Conclusion

For the reasons stated herein, Defendants' Motion to Dismiss is granted in part and denied in part.  Pursuant to Fed. R. Civ. P. 41(a), the three Individual Defendants are dismissed from this case without prejudice.  Any claim by Plaintiffs that the District retaliated against them

---

[3] The Court notes, however, that the Amended Complaint, while not legally deficient, fails to assert that Defendants were actually *aware* of the existence of any individuals similarly situated to Plaintiffs, and welcomes the offer, made by Plaintiffs' counsel at oral argument, to file a Second Amended Complaint that would make explicit that allegation and that would identify those allegedly similarly situated individuals with more specificity.

for reporting misconduct to the police is dismissed, because Plaintiffs fail to state a claim that

they spoke to the police as citizens on a matter of public concern.  Plaintiffs' remaining claims

are that the District (1) violated Plaintiffs' First Amendment rights by (a) retaliating against

Plaintiffs for reporting their coworkers' misconduct to Defendants, (b) retaliating against

Plaintiffs for filing their original Complaint in this action, and (c) chilling Plaintiffs' right to

communicate with students and their parents about the misconduct, and (2) violated Plaintiffs'

rights under the Equal Protection Clause by subjecting Plaintiffs to adverse employment actions

not suffered by similarly situated coworkers.

The Clerk of Court is respectfully directed to terminate the pending Motion, and to

dismiss Defendants Quartararo, Reidy, and DeAlleaume from the case.

SO ORDERED.

Dated:        February 18, 2009
              White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

23

Service List (By ECF):

Jonathan Lovett, Esq.
Lovett & Gould
222 Bloomingdale Road, Suite 305
White Plains, NY  10605
jlovett@lovett-gould.com

Kim P. Berg, Esq.
Lovett & Gould
222 Bloomingdale Road, Suite 305
White Plains, NY  10605
kberg@lovett-gould.com

Paul F. Millus, Esq.
Snitow Kanfer Holtzer & Millus LLP
575 Lexington Avenue
New York, NY  10022
pmillus@skhmlaw.com